**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLOS ALBERTO RENDON,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 10-72239<br><br>Agency No.<br>A092-080-719<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 5, 2014—Pasadena, California

Filed August 22, 2014

Before: Stephen Reinhardt, Raymond C. Fisher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Immigration

The panel granted Carlos Alberto Rendon's petition for review of the Board of Immigration Appeals' decision finding him statutorily ineligible for cancellation of removal based on his conviction for attempted second-degree burglary under California state law.

The panel held as an initial matter that California Penal Code § 459 is not a categorical match to the federal generic attempted theft offense because it punishes a broader range of conduct. The panel held that the BIA impermissibly applied the modified categorical approach to determine that Rendon's CPC § 459 conviction qualified as an attempted theft aggravated felony. The panel held that under *Descamps v. United States*, 133 S. Ct. 2276 (2013), CPC § 459 is indivisible as a matter of law, and that in the language at issue: "with intent to commit grand or petit larceny or any felony," the use of the disjunctive "or" between "grand or petit larceny" and "any felony" did not render the statute divisible. The panel wrote that it necessarily follows from *Richardson v. United States*, 526 U.S. 813, 815 (1999), that the Supreme Court regards elements as circumstances upon which a jury must unanimously agree but regards means as circumstances on which the jury may disagree yet still convict. The panel held that determining whether a disjunctively worded statute is divisible or not requires looking to whether the state treats the parts of the statute on

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

opposite sides of the "or" as alternative elements or alternative means. The panel held that the substantive crimes set forth in the language at issue are alternative means of satisfying the intent element of CPC § 459, and the statute is indivisible.

## COUNSEL

Brigit G. Alvarez (argued), Law Office of Brigit G. Alvarez, Los Angeles, California, for Petitioner.

Gary J. Newkirk (argued), Trial Attorney; Tony West, Assistant Attorney General; Francis W. Fraser, Senior Litigation Counsel; and Jacob A. Bashyrov, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## OPINION

REINHARDT, Circuit Judge:

In this case, we consider whether a statute written in the disjunctive is divisible in light of the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). The statutory text at issue is a different portion of the same statute that the Supreme Court encountered in *Descamps* — California Penal Code section 459 — which states, *inter alia*, that "[e]very person who enters any . . . vehicle . . . , when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Here, the Board of Immigration Appeals (BIA) determined that petitioner's conviction under section 459

qualified as an attempted theft offense, an aggravated felony under 8 U.S.C. § 1101(a)(43)(U), by applying the modified categorical approach. This approach is permissible only if section 459 is divisible. We hold that the presence of an "or" between "grand or petit larceny" and "any felony" does not, in itself, render the statute divisible, and that, under *Descamps*, section 459 is indivisible as a matter of law. Therefore, the BIA's use of the modified categorical approach was impermissible, and we accordingly grant the petition for review.

## BACKGROUND

Petitioner Carlos Alberto Rendon, a native and citizen of Mexico, was admitted to the United States in 1989 as a Lawful Permanent Resident (LPR). On July 29, 1999, the Immigration and Naturalization Service (INS) lodged a charge against petitioner based on his 1996 second-degree burglary conviction in California state court under section 459/460(b) of the California Penal Code. The INS contended that this offense qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) because it was "a theft offense . . . or burglary offense for which the term of imprisonment [was] at least one year." On this basis, the INS alleged that petitioner was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony.[1]

---

[1] The INS also filed a notice to appear alleging that petitioner was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been convicted of two other crimes which qualified as crimes of moral turpitude. The Immigration Judge (IJ) ultimately agreed, and petitioner did not challenge this finding in his most recent appeal to the BIA. Therefore, petitioner's removability is not at issue in this case. However,

On August 24, 1999, the Immigration Judge (IJ) agreed with the INS that petitioner was removable and denied petitioner's request for adjustment of status and a waiver under 8 U.S.C. § 1182(h) because, according to the IJ, petitioner had been convicted of an aggravated felony, which rendered him ineligible for such a waiver. On appeal, the Board of Immigration Appeals (BIA) remanded to the IJ for consideration of a subsequent BIA opinion interpreting the meaning of "burglary offense" in 8 U.S.C. § 1101(a)(43)(G), as well as conflicting federal court cases concerning the intersection between state burglary convictions and crimes of violence, which are aggravated felonies under 8 U.S.C. § 1101(a)(43)(F).

On remand, petitioner sought cancellation of removal under 8 U.S.C. § 1229b(a). This time, the IJ determined that petitioner's 1996 second-degree burglary conviction was an aggravated felony because it qualified under 8 U.S.C. § 1101(a)(43)(U) as an attempted theft offense.[2] Commission of an aggravated felony renders an alien statutorily ineligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). As a result, the IJ concluded that petitioner was statutorily

committing two crimes of moral turpitude does not render petitioner statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a).

[2] 8 U.S.C. § 1101(a)(43)(U) includes within the definition of an aggravated felony "an attempt or conspiracy to commit an offense" in 8 U.S.C. § 1101(a)(43). Thus, a conviction for attempting to commit a theft offense or a burglary offense — offenses which may be aggravated felonies under 8 U.S.C. § 1101(a)(43)(G) — may be an aggravated felony itself.

ineligible for cancellation of removal.**3**  The BIA dismissed petitioner's appeal of the IJ's decision.  In support of its decision, the BIA looked to the contents of petitioner's plea to determine that he had been convicted of California Penal Code section 459 for "entering a locked vehicle *with the intent to commit larceny*, an aggravated felony" (emphasis added).  Petitioner filed a timely petition with this Court for review of the BIA's decision that his conviction under California Penal Code section 459 was an aggravated felony that rendered him ineligible for cancellation of removal.

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law, including whether a conviction qualifies as an aggravated felony.  *Mandujano-Real v. Mukasey*, 526 F.3d 585, 588 (9th Cir. 2008).  We review this legal question de novo.  *Id.*

## DISCUSSION

Petitioner was convicted of second-degree burglary under California Penal Code section 459, which states, *inter alia*, that "[e]very person who enters any . . . vehicle . . . , when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  This conviction qualifies as an aggravated felony if petitioner's violation was an attempted "theft offense . . . or burglary offense for which the term of imprisonment [was] at least one year."  8 U.S.C. § 1101(a)(43)(G); *id.* § 1101(a)(43)(U).  *Descamps* held that a conviction under section 459 does not qualify as a conviction for generic burglary.  133 S. Ct. at 2293.  The BIA

---

**3** According to the IJ, this determination also prevented petitioner from obtaining voluntary departure under 8 U.S.C. § 1229c or relief under former section 212(c) of the Immigration and Nationality Act.

determined, however, that petitioner was ineligible for cancellation of removal because his conviction under section 459 was for an attempted *theft offense*. We disagree. Accordingly, we grant the petition and remand for further proceedings consistent with this opinion.[4]

# I

In order to determine whether a state conviction qualifies as an attempted theft offense under the federal aggravated felony statute, 8 U.S.C. § 1101(a)(43)(U), we use the approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185–87 (2007). That approach — deemed the "categorical approach" — requires that courts "'look only to the statutory definitions' — *i.e.*, the elements — of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions'" when making a comparison between a prior conviction and a federal, generic crime. *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 600). If the state statute under which the defendant was previously convicted has the same elements as, or is narrower than, the federal, generic crime, then the prior conviction can serve as an aggravated felony predicate. *Id.* However, if the state "statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an [aggravated felony] predicate, even if the defendant actually committed the offense in its generic form." *Id.*

---

[4] Because we grant the petition, we need not reach petitioner's argument that he could not be deemed ineligible for cancellation of removal based on a ground that was not charged in his notice to appear.

For the limited purpose of "help[ing to] implement the categorical approach," *id.* at 2285, the Court has recognized a "narrow range of cases" in which courts may apply the "modified categorical approach," *id.* at 2283 (quoting *Taylor*, 495 U.S. at 602) (internal quotation marks omitted). The modified categorical approach allows courts to look beyond the statutory text to a limited set of documents to determine the elements of the state offense of which the defendant was convicted when some alternative elements of the state crime would match the federal, generic crime, and other alternative elements would not. *See id.* at 2285. Recently, the Supreme Court in *Descamps* explained that courts may use the modified categorical approach only when a statute is divisible — i.e., "lists multiple, alternative *elements*, and so effectively creates 'several different . . . crimes.'" *Id.* (quoting *Nijhawan v. Holder*, 129 S. Ct. 2294, 2303 (2009)) (emphasis added). The Court contrasted divisible statutes with those that are indivisible — i.e., contain a "single, indivisible set of elements" constituting a single crime — for which the modified categorical approach is inappropriate. *Id.* at 2282. This decision abrogated our earlier decision in *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 927–28 (9th Cir. 2011) (en banc), in which we had asserted that courts could use the modified categorical approach when a statute is indivisible, yet missing an element of the federal, generic crime. Thus, after *Descamps* we may apply the modified categorical approach only when the state statute at issue is divisible.[5]  If the state statute at issue is overbroad and

---

[5] Although *Descamps* discussed the issue of divisibility in the context of a sentence enhancement under the Armed Career Criminal Act (ACCA), we have applied *Descamps* in the context of collateral immigration consequences. *See, e.g.*, *Coronado v. Holder*, No. 11-72121, 2014 WL 3537027 (9th Cir. July 18, 2014) (applying *Descamps* to

indivisible, we may not apply the modified categorical approach, and we must hold that petitioner has met his burden for establishing that he was not convicted of an aggravated felony.[6]

## II

### A.

In this case, the BIA applied the modified categorical approach to determine that petitioner's conviction under

---

determine whether a state drug conviction rendered an alien inadmissible for violating a law relating to a controlled substance as defined by federal law); *Aguilar-Turcios v. Holder*, 740 F.3d 1294 (9th Cir. 2014) (applying *Descamps* to determine whether an alien was removable for having committed an aggravated felony). Thus, we have no doubt that *Descamps* applies to this case.

[6] Our decision in *Young v. Holder*, 697 F.3d 976, 989 (9th Cir. 2012) (en banc), does not require a different result. *Young* held that, when a court applies the modified categorical approach, a petitioner cannot demonstrate eligibility for cancellation of removal on an inconclusive record because, in such a case, it is both "possible that Petitioner's prior conviction constitutes an aggravated felony" and "possible that it does not." *Id.* at 990. That is because the modified categorical approach allows a court reviewing a prior conviction under a divisible statute to determine which of "several different . . . crimes" was at issue. *Descamps*, 133 S. Ct. at 2285 (quoting *Nijhawan*, 129 S. Ct. at 2303) (internal quotation marks omitted). In contrast, a defendant convicted of an indivisible statute has necessarily committed the one crime at issue, and that crime is either a match to the federal, generic crime, or it is not. The record is never inconclusive. Thus, if the petitioner establishes that the statute under which he was convicted is indivisible and punishes a broader range of conduct than the federal, generic crime, it is *never* possible for that conviction to qualify as an aggravated felony, and the petitioner has met his burden. We need not, and do not, decide whether *Young* is incompatible with *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).

California Penal Code section 459 was an attempted theft offense, which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(U) and 8 U.S.C. § 1101(a)(43)(G). We review only whether petitioner's conviction qualifies as an attempted theft offense because "[o]ur review is limited to the BIA's decision and the grounds" upon which it found petitioner ineligible for cancellation of removal. *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 921–22 (9th Cir. 2007).[7]

As an initial matter, California Penal Code section 459 is not a categorical match to the federal, generic crime of an attempted theft offense because section 459 punishes a broader range of conduct than a generic attempted theft offense. Section 459 states, *inter alia*, that "[e]very person who enters any . . . vehicle . . . , when the doors are locked, . . . with intent to commit grand or petit larceny *or any felony* is guilty of burglary" (emphasis added). A generic attempted theft offense includes two elements: "[1] an intent to commit a theft offense . . . [and] [2] an overt act constituting a substantial step towards the commission of the offense."[8] *Ngaeth*, 545 F.3d at 801. Our precedent squarely holds that section 459 punishes a broader range of conduct than the

---

[7] Indeed, the government's argument is confined to whether petitioner's conviction qualifies as an attempted theft offense, rather than any other aggravated felony.

[8] Because we ultimately hold that section 459 (or at least the portion that provides, "with intent to commit grand or petit larceny or any felony") is indivisible and that, as a result, a sentencing court cannot conclude that the conduct underlying a particular conviction involved the intent to commit theft, it follows that we also cannot conclude that a defendant took a "substantial step" toward theft in any given case. *Contra Ngaeth v. Mukasey*, 545 F.3d 796, 802 (9th Cir. 2008) (per curiam); *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1104–05 (9th Cir. 2011).

generic crime of an attempted theft offense because "[s]ection 459 may be violated by an attempt to commit a crime other than theft — for example, by breaking into a vehicle with the intent to commit arson." *Id.*[9]

Before *Descamps*, we would have applied the modified categorical approach to determine whether the documents we are permitted to examine in implementing that approach reveal that petitioner intended to commit theft. *See, e.g.*, *id.* at 801–02. However, in light of *Descamps*, we cannot employ that approach unless the statute is divisible. Here, we conclude that it is not.

### B.

*Descamps* addressed the proper method for distinguishing divisible statutes from indivisible statutes. The critical distinction is that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes. *See Descamps*, 133 S. Ct. at 2285 n.2; *United States v. Cabrera-Gutierrez*, No. 12-30233, 2014 WL 998173, at *8 n.16 (9th Cir. Mar. 17, 2014) ("[U]nder *Descamps*, what must be divisible are the elements of the crime, not the mode or means of proving an element."). This distinction explains why the modified categorical approach is appropriate only for divisible statutes — because

---

[9] It bears noting that this conclusion from *Ngaeth* is clearly correct. *See People v. Montoya*, 874 P.2d 903, 911 n.8 (Cal. 1994) (explaining that the text of section 459 and the cases interpreting it establish that a defendant may be convicted under the statute for entering with the intent to commit any felony, rather than only theft offenses, and listing cases that prove the point).

the modified categorical approach as applied to a divisible statute may reveal which alternative *element* the state charged and the jury or judge found when only some alternative elements match the federal, generic crime. In other words, as *Descamps* explained, when a state statute punishes a broader range of conduct than a federal, generic crime, "only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime." 133 S. Ct. at 2290. That is because "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Id.* (citation and footnote omitted).

While the jury faced with a divisible statute must unanimously agree on the particular offense of which the petitioner has been convicted (and thus, the alternative element), the opposite is true of indivisible statutes; the jury need not so agree. For example, if the statute at issue is indivisible, the jury would not need to agree on the particular substantive crime that the defendant intended as long as all jurors find that the defendant intended to commit at least one of "grand or petit larceny or any felony." To illustrate this point, the *Descamps* Court used an example from *Aguila-Montes* where a state statute criminalized assault with a "weapon," while a federal enhancement statute applied only if the defendant was convicted of assault with a gun. The Court explained that "[a]s long as the statute itself requires only an indeterminate 'weapon,' that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention. And most important, that is all the jury must find to convict the defendant. The jurors need not

all agree on whether the defendant used a gun or a knife or a tire iron . . . , because the actual statute requires the jury to find only a 'weapon.'  And even if in many cases, the jury could have readily reached consensus on the weapon used, a later sentencing court cannot supply that missing judgment." *Id.*  In other words, *Descamps* held that indivisible statutes are indivisible precisely because the jury need not agree on anything past the fact that the statute was violated.  As long as the defendant's conduct violates the statute, the jury can disagree as to how, and a later sentencing court cannot conclude that the jury in fact agreed on the particular means of commission.

Of course, this logic need not be limited to statutes with indeterminate words (e.g., "weapon") that are only implicitly divisible ("gun, knife, tire iron, etc.").  Any statutory phrase that — explicitly or implicitly — refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used.  Otherwise, the Court's express purpose for separating indivisible statutes from divisible statutes — preventing sentencing courts from finding *facts* on which a jury *did not* have to agree, rather than *elements* on which a jury *did* have to agree — would be undermined.  To be clear, it is black-letter law that a statute is divisible only if it contains multiple alternative *elements*, as opposed to multiple alternative *means*.  *Id.* at 2285.  Thus, when a court encounters a statute that is written in the disjunctive (that is, with an "or"), that fact alone cannot end the divisibility inquiry.  Only when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able

to conclude that the statute contains alternative *elements* and not alternative *means*.

That the distinction between elements and means is reflected in the requisite jury findings is well-established in Supreme Court precedent. For example, in *Richardson v. United States*, 526 U.S. 813, 815 (1999), the Court encountered a federal statute forbidding any person from engaging in a "continuing criminal enterprise," which the statute defined as involving a "continuing series of violations." The question at issue was whether the jury was required to unanimously agree on which particular violations constituted the "series of violations." *Id.* at 816. The Court explained that while a "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each *element*," a "federal jury need not always decide unanimously . . . which of several possible *means* the defendant used to commit an element of the crime." *Id.* at 817 (emphasis added). On the assumption that three violations constitutes a "series," the Court held that "[i]f the statute creates a single element, a 'series,' in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove" but "need not agree about which three," while "if the statute makes each 'violation' a separate element, then the jury must agree unanimously about which three crimes the defendant committed." *Id.* at 818. It necessarily follows from *Richardson* that the Supreme Court regards *elements* as those circumstances on which the jury must unanimously agree, while it regards *means* as those circumstances on which the jury may disagree yet still convict. Indeed, the *Descamps* Court cited *Richardson* for the proposition that "the only facts the court can be sure the jury . . . found [unanimously and

beyond a reasonable doubt] are those constituting *elements* of the offense." 133 S. Ct. at 2288 (citing *Richardson*, 526 U.S. at 817) (emphasis added).[10]

Both binding and persuasive precedent provide further support for our conclusion that the distinction between elements and means parallels the need for juror agreement. In *United States v. Cabrera-Gutierrez*, we considered whether an Oregon sexual abuse statute was divisible because it covered sexual intercourse both where the victim, although capable of consenting, does not consent, and where the victim is incapable of consenting. 2014 WL 998173, at *5. We explained that, under *Descamps*, "what must be divisible are the elements of the crime, not the mode or means of proving an element," and the statute at issue was therefore indivisible because the state in a case concerning this Oregon statute "need[s to] prove only that a defendant has engaged in intercourse with another and that the other 'does not consent thereto.'" *Id.* at *8 & n.16. In other words, the state does not need to prove (and the judge or jury does not need to find) one particular theory of non-consent, and as a result, "a sentencing court cannot tell whether the jury or judge

[10] The interplay between the majority and dissent in *Descamps* further confirms our understanding of how to perform a proper divisibility inquiry. The *Descamps* dissent characterized the majority opinion as holding that a statute is divisible "only if the offense in question includes as separate elements all of the elements of the generic offense," and that an "element" is "something on which a jury must agree by the vote required to convict under the law of the applicable jurisdiction." 133 S. Ct. at 2296 (Alito, J., dissenting). While the majority contested the dissent's argument that the Court's prior cases are inconsistent with this method of distinguishing divisible statutes from indivisible statutes, the majority did not contest the dissent's characterization of how the majority distinguishes divisible statutes from indivisible statutes. *See* 133 S. Ct. at 2285 n.2 (majority opinion).

convicted a defendant of intercourse with a victim who did not actually consent or a victim who lacked capacity to consent." *Id.* at \*8.[11]    The Fourth Circuit has reasoned similarly. *See United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1777 (2014) (holding that "offensive physical contact" and "physical harm" are "merely alternative *means* of satisfying a single element" of the

---

[11] While we have found, in a few cases decided after *Descamps*, that statutes written in the disjunctive are divisible without inquiring into the need for juror unanimity, those cases are either distinguishable from the present case or consistent with our approach.    In two cases, it was impossible for the state to allege and the jury to find that the defendant violated the alternative parts of the statute simultaneously, whereas it is certainly possible for the state to allege and the jury to find that a defendant charged with violating section 459 had the intent to commit both a theft offense and a non-theft felony following entry. *See United States v. Quintero-Junco*, 754 F.3d 746, 752 (9th Cir. 2014) (a statute punishing a person who "engag[es] in sexual contact with any person who is fifteen or more years of age without consent of that person or with any person who is under fifteen years of age if the sexual contact involves only the female breast" (quoting Ariz. Rev. Stat. § 13-1404) (internal quotation marks omitted))*; Duenas-Alvarez v. Holder*, 733 F.3d 812, 814–15 (9th Cir. 2013) (a statute "impos[ing] criminal liability in the alternative on principals as well as on accessories after the fact").    In *Murillo-Prado v. Holder*, 735 F.3d 1152, 1157 (9th Cir. 2013) (per curiam), the Arizona statute contained a list of alternative definitions of racketeering, each as its own subsection of the statute.    We relied on pre-*Descamps* Ninth Circuit precedent (without mentioning *Descamps*) holding the modified categorical approach applicable to the statute; there was no indication that, under Arizona law, a jury could disagree regarding which portion of the racketeering definition was at issue, yet still convict.    Perhaps most telling is *Coronado v. Holder*, 2014 WL 3537027, at \*5 n.4, in which the petitioner argued that a disjunctive statute contained alternative means, rather than alternative elements, and we properly looked beyond the statutory text to state case law and jury instructions to evaluate and ultimately reject that contention. *See also Ragasa v. Holder*, 752 F.3d 1173, 1176 (9th Cir. 2014) (relying on *Coronado* to reach the same conclusion regarding a similarly structured statute).

Maryland assault statute, rather than alternative *elements*, because "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on whether the defendant caused 'offensive physical contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which").

Our conclusion here also mirrors the BIA's understanding of *Descamps*. After argument in this case, the BIA revisited its method of determining whether a statute is divisible. *See Matter of Chairez*, 26 I & N Dec. 349, 352–54 (BIA 2014) (reconsidering *Matter of Lanferman*, 25 I & N Dec. 721 (BIA 2012), and ultimately "withdraw[ing] from that decision to the extent that it is inconsistent with *Descamps*," *id.* at 354). The BIA explained that, after *Descamps*, a statute is divisible only if, *inter alia*, "it lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to disjunctive sets of 'elements,' more than one combination of which could support a conviction." *Id.* at 353 (citing *Descamps*, 133 S. Ct. at 2281, 2283). Directly in line with our approach in this case, the BIA further explained that "an offense's 'elements' are those facts about the crime which '[t]he Sixth Amendment contemplates that a jury — not a sentencing court — will find . . . unanimously and beyond a reasonable doubt.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2288). The BIA applied its new, post-*Descamps* approach to the Utah statute at issue, a criminal statute punishing certain discharges of a firearm which included a mens rea element requiring that the defendant acted with "intent, knowledge, or recklessness." *Id.* at 352. Despite the fact that the mental states in the statute were written in the disjunctive, the BIA did precisely what we hold is necessary when courts encounter a statute written in the disjunctive: it

asked whether "Utah law requires jury unanimity regarding the mental state with which the accused discharged the firearm." *Id.* at 354. The BIA correctly explained that "[i]f Utah does not require such jury unanimity, then it follows that intent, knowledge, and recklessness are merely alternative 'means' by which a defendant can discharge a firearm, not alternative 'elements' of the discharge offense." *Id.*

In this case, we apply the *Descamps* method of distinguishing divisible statutes from indivisible statutes to California Penal Code section 459. Section 459 punishes individuals who enter, *inter alia*, a locked vehicle[12] with the intent to commit a crime. As we explain below, the state does not require that the prosecution prove and the jury unanimously find that the defendant intended to commit any particular offense following entry. Rather, it is sufficient that the defendant had the requisite intent to commit larceny or any felony, whether or not the jurors disagree regarding the particular offense the defendant intended to commit. Thus, we hold that the particular substantive crime the defendant intended to commit is not an element of section 459; rather, the various substantive crimes that the defendant may intend to commit are simply alternative means of satisfying one element — that of criminal intent to commit a listed offense following entry. Accordingly, section 459 is indivisible.

---

[12] In addition to people who enter locked vehicles, section 459 also applies to "[e]very person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, . . . floating home, . . . railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, . . . any house car, . . . inhabited camper, . . . aircraft . . . , or mine or any underground portion thereof."

## C.

In sum, we determine whether a disjunctively worded state statute is divisible or not by looking to whether the state treats the parts of the statute on opposite sides of the "or" as alternative elements or alternative means.[13]   In this case, California state law is clear: the jury need not be unanimous[14] regarding the particular offense the defendant intended to commit in order to convict under section 459.   All the prosecution must prove is that the defendant intended to commit *an* offense listed in the statute — namely, "grand or petit larceny or any felony."   The jury need not agree on which of the substantive offenses the defendant intended to commit — only that he intended to commit an offense listed in the statute.   Therefore, the substantive crimes are alternative *means* of satisfying the intent element of the statute, and the statute is indivisible.   As a result, we are unable to conclude that petitioner was convicted of having the intent to commit a theft offense rather than a non-theft felony.

---

[13] While the Supreme Court reserved the question whether a court seeking to determine a crime's elements "should take account not only of the relevant [state] statute's text, but of judicial rulings interpreting it," *Descamps*, 133 S. Ct. at 2291, this court has looked to the state courts to determine the elements of state law, *see Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1084 (9th Cir. 2010).  It is both consistent with *Descamps* and most faithful to its reasoning to review state law regarding the unanimity of jury verdicts for the purpose of determining whether a disjunctively worded statute contains alternative elements or alternative means.  We need not, and do not, decide whether it is appropriate to review state law to determine anything further when performing a divisibility analysis in light of *Descamps*.

[14] "In a [California] criminal case, a jury verdict must be unanimous." *People v. Russo*, 25 P.3d 641, 645 (Cal. 2001).

The first California case to address the issue of jury unanimity regarding the defendant's intent in section 459 cases was *People v. Failla*, 414 P.2d 39 (Cal. 1966).  There, the Supreme Court of California rejected the argument that it was "necessary for all the jurors to agree on what particular felony or felonies" the defendant intended at the time of entry, reasoning instead that section 459 "sets forth only one act which constitutes the offense, but that act may be presented to the jury on several different 'theories.'"  *Id.* at 44.  As a result, the court declared that "in prosecutions for burglary . . . the jurors need not be instructed that to return a verdict of guilty they must all agree on the specific 'theory' of the entry — i.e., what particular felony or felonies the defendant intended at the time — provided they are told they must be unanimous in finding that a felonious entry took place."  *Id.* at 45.

Relying on *Failla*, subsequent cases have made it clear that the jury need not agree on whether a defendant charged with violating section 459 had the intent to commit a theft offense or a non-theft felony.  For example, in *People v. Smith*, 78 Cal. App. 3d 698 (Ct. App. 1978), the court cited *Failla* for the proposition that the defendant "could have been found guilty if six of the jurors agreed that defendant had the intent to steal while the remaining six found that he had an intent to commit an assault by means likely to produce great bodily injury. . . . [A]s long as *each* of the twelve jurors finds that defendant had the specific intent to commit either of the two crimes mentioned, it is immaterial as to the division of the jurors between the two intended crimes."  *Id.* at 708.  *People v. Griffin*, 90 Cal. App. 4th 741 (Ct. App. 2001), reached the same conclusion and specifically rejected the argument that because *Failla* did not involve any allegation of an intent to commit theft, it was distinguishable from those

cases that do include such an allegation. *See id.* at 752 ("[T]he fact that *Failla* did not involve theft as an alternative theory of guilt does not provide a meaningful basis to distinguish it from the facts of the . . . case.").**15** By now, the rule concerning juror agreement regarding the defendant's intent in section 459 cases is so well-established that the Supreme Court of California has used it as an example to demonstrate the difference between "discrete crimes, which require a unanimity instruction, and theories of the case, which do not." *Russo*, 25 P.3d at 646.

California law overwhelmingly dictates the conclusion that the jury in a case concerning an alleged violation of section 459 need not be unanimous regarding whether the defendant intended to commit a theft offense or any other felony. Thus, the fact that section 459 contains two types of offenses preceding an "or" and a general category of offenses following the "or" is in itself of no significance. Because the jury could convict a defendant of section 459 without agreeing on whether the defendant had the intent to commit, on the one hand, "grand or petit larceny," or, on the other

---

**15** In *Griffin*, the court explained that "[i]t has long been the general rule in California . . . that when a single crime can be committed in various ways, jurors are not required to unanimously agree upon the *mode* of commission." 90 Cal. App. 4th at 750 (citing *People v. Sutherland*, 17 Cal. App. 4th 602, 612 (Ct. App. 1993)). This rule is known as the "*Sullivan* rule," named for *People v. Sullivan*, 65 N.E. 989 (N.Y. 1903). It holds that "where a statute prescribes disparate alternative means by which a single offense may be committed, no unanimity is required as to which of the means the defendant employed so long as all the members of the jury are agreed that the defendant committed the offense as it is defined by the statute." *Sutherland*, 17 Cal. App. 4th at 613. It follows that we must take great care when considering California state violations as a prior offense because a disjunctively worded California statute may simply be listing alternative means rather than alternative elements.

hand, any non-theft felony, we (and the BIA) cannot determine that the jury in such a case concluded, beyond a reasonable doubt, that the defendant attempted to commit a theft offense rather than a non-theft felony. As a result, the language at issue — "with intent to commit grand or petit larceny or any felony" — is indivisible, and the use of the modified categorical approach is not permissible. *See Descamps*, 133 S. Ct. at 2282.

## CONCLUSION

We hold that petitioner's conviction under California Penal Code section 459 cannot qualify as an attempted theft offense under 8 U.S.C. § 1101(a)(43)(U) and therefore does not render petitioner ineligible for cancellation of removal on that basis. We therefore GRANT the petition for review, REVERSE the decision of the BIA, and REMAND to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED AND REMANDED.**