**UNITED STATES of America,**
**Plaintiff,**

v.

**Craig Allen LADWIG, Defendant.**

**Case No. 2:03-CR-00232-RHW**

United States District Court,
E.D. Washington.

Signed June 28, 2016

**1156**

Stephanie Joyce Lister, US Attorney's Office, Spokane, WA, for Plaintiff.

Alison Klare Guernsey, Federal Defenders, Yakima, WA, Matthew A. Campbell, Christina L. Hunt, Meredith B. Esser, Federal Defenders, Spokane, WA, for Defendant.

## ORDER GRANTING DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE

### U.S. MARSHAL SERVICE ACTION REQUIRED

ROBERT H. WHALEY, Senior United States District Judge

Before the Court is Defendant's 28 U.S.C. § 2255 Motion to Vacate Sentence and for Immediate Release. ECF No. 58. The Court heard oral argument on June 22, 2016. Mr. Ladwig was represented by Alison Guernsey of the Federal Defenders of Eastern Washington and Idaho. Assistant United States Attorney Stephanie Lister appeared on behalf of the government. The Court has reviewed the motion and all relevant filings, considered oral argument from counsel, and is fully informed.

## BACKGROUND

On November 4, 2003, a grand jury returned an indictment charging Mr. Ladwig with two counts of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g) and 924. ECF No. 2. Mr. Ladwig pled guilty to count two of the Indictment, a single felon in possession charge, on March 3, 2004. ECF No. 17. Mr. Ladwig's Presentence Investigation report advised that Mr. Ladwig qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), ECF No. 64 at 34, which if applicable to Mr. Ladwig, would enhance his sentence

from a statutory maximum of ten years to a statutory minimum of fifteen. See 18 U.S.C. §§ 924(a)(2) & (e)(1). The Presentence Report noted three prior convictions that U.S. Probation believed qualified Mr. Ladwig for the statutory enhancement: second degree burglary, in violation of WASH. REV. CODE § 9A.52.030; attempted second degree rape, in violation of WASH. REV. CODE § 9A.44.040(1)(a); and harassment/threat to kill, in violation of Wash. Rev. Code § 9A.61.230(2)(b).

At the September 3, 2004 sentencing hearing, Mr. Ladwig conceded that his second-degree burglary charge qualified as a predicate felony. ECF No. 35 at 9. Mr. Ladwig also appears to have conceded that his attempted second degree rape conviction was an ACCA predicate felony, as he did not object to the Presentence Report's inclusion of that conviction either at the sentencing hearing or in his filed objections to the Presentence Report. See ECF No. 35 (transcript of sentencing); ECF No. 26 (Defendant's objections to the Presentence Report). The only predicate felony Mr. Ladwig contested at his sentencing hearing was his conviction for Harassment/Threat to Kill. See ECF No. 35 at 10.

The Court overruled Mr. Ladwig's objection, found him to be an armed career criminal, id. at 13–14, and sentenced him to a 200 month term of incarceration, five years of supervised release, a $100 special penalty assessment, and no fine. ECF No. 29.[1] Mr. Ladwig appealed this Court's finding that his telephone harassment conviction was a violent felony, but on December 27, 2005 the Ninth Circuit affirmed. See *United States v. Ladwig*, 432 F.3d 1001 (9th Cir.2005).

On June 27, 2014, Mr. Ladwig filed a motion under 28 U.S.C. § 2255 to vacate his sentence based on the U.S. Supreme

---

1. Although the court pronounced Mr. Ladwig's sentence at the September 3, 2004, sentencing hearing, the Judgment was not entered until September 15, 2004. ECF No 29.

Court's decision in *United States v. Descamps*, ––– U.S. –––, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). ECF No. 43. On November 14, 2014, this Court stayed consideration of Mr. Ladwig's motion until the Ninth Circuit issued a decision in *Ezell v. United States*, 778 F.3d 762 (9th Cir.2015), which ultimately held that *Descamps* did not announce a new rule of constitutional law. Following the Ninth Circuit's reasoning in *Ezell*, the Court denied Mr. Ladwig's motion as untimely. ECF No. 51.

On November 20, 2015, Mr. Ladwig filed an Application for Permission to File a Second or Successive Habeas Corpus Petition with the Ninth Circuit in light of *Johnson v. United States*, ––– U.S. –––, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). On April 27, 2016, the Ninth Circuit granted Mr. Ladwig's application and deemed his motion filed in this Court on April 21, 2016. ECF No. 59.

## DISCUSSION

Mr. Ladwig moves the Court to vacate his sentence pursuant to 28 U.S.C. § 2255 arguing that, after the Supreme Court's decision in *Johnson*, his ACCA enhanced 200 month sentence is in excess of the maximum authorized by law because his second degree burglary and attempted second degree rape convictions no longer qualify as violent felonies under the ACCA.

### I. 28 U.S.C. § 2255

■ 28 U.S.C. § 2255 outlines four grounds upon which a Court may grant relief to a prisoner who challenges his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Although there are four catego-

ries, the range of claims that fall within the scope of § 2255 are narrow. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir.1981). The asserted error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

### II. The Armed Career Criminal Act

18 U.S.C. § 924(e), known as the Armed Career Criminal Act, enhances the sentences of federal defendants who have three prior convictions "for a violent felony, or a serious drug offense, or both" from a statutory maximum of ten years to a statutory minimum of fifteen. 18 U.S.C. §§ 924(e)(1). The statute defines violent felony to include any crime punishable by imprisonment for a term exceeding one year that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).

■ The italicized language in 18 U.S.C. § 924(e)(2)(B)(ii) is commonly known as the "residual clause," and is the portion of the statute invalidated by the Supreme Court's decision in *Johnson*. *See Johnson*, 135 S.Ct. at 2556–57, 2563. The remaining clauses, § 924(e)(2)(B)(i) (the "elements clause") and the first clause of § 924(e)(2)(b)(ii) (the "enumerated offenses clause"), are still effective. *Id.* at 2563. Recently, the Supreme Court held that its decision in *Johnson* announced a new substantive rule that applies retroac-

tively to cases on collateral review. *See Welch v. United States,* —— U.S. ——, 136 S.Ct. 1257, 1268, 194 L.Ed.2d 387 (2016).

### III. Legal Basis for Mr. Ladwig's Motion

■ In opposing Mr. Ladwig's motion, the government advances two arguments which, in essence, contend that Mr. Ladwig's request for relief is not actually based on *Johnson* and that accordingly, Mr. Ladwig is not entitled to the relief *Johnson* prescribes. First, the government argues that because Mr. Ladwig cannot affirmatively show that this Court relied on the residual clause in finding that Mr. Ladwig's prior convictions qualified as violent felonies, he is not entitled to relief under *Johnson.* ECF No. 65 at 7–8. The government cites no authority in support of this conclusion. Mr. Ladwig responds that he does not bear the burden of showing that the district court relied on the residual clause to establish constitutional error. ECF No. 66 at 2–7.

In so arguing, Mr. Ladwig makes a powerful analogy to habeas petitions based on unconstitutional jury instructions. In such cases, a "general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." *See Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Mr. Ladwig asserts that the Court should apply a similar principle here, where the record is unclear whether the Court relied on the residual clause or the remaining, constitutional clauses of the ACCA, and the Court's finding—that Mr. Ladwig's convictions for second degree burglary and attempted second degree rape were violent felonies—may have rested exclusively on the unconstitutional residual clause.

Mr. Ladwig's analogy is powerful because of the unique nature of *Johnson*-based claims.[2] As he astutely points out, ECF No. 66 at 2, with most claims of constitutional error there is no dispute about what action a district court took— the only question is whether the law deems that action unconstitutional. Here, however, because Mr. Ladwig conceded that his second degree burglary and attempted second degree rape convictions qualified as violent felonies,[3] the Court never made

---

**2.** Notably, this Court is not the first to have agreed with this analogy. *See United States v. Navarro,* No. 10–CR–2104–RMP, 2016 WL 1253830 at *3 (E.D.Wash. March 10, 2016).

**3.** These concessions made sense given the state of the law at the time of Mr. Ladwig's sentencing. The general consensus regarding similar sexual assault statutes was that they fell within the now-invalid residual clause. *See, e.g., United States v. Wood,* 52 F.3d 272 (9th Cir.1999) (holding that Washington conviction for indecent liberties with a minor was a "crime of violence" under the residual clause of U.S.S.G. § 4B1.2); *United States v. Riley,* 183 F.3d 1155, 1161 (9th Cir.1999) (holding that Louisiana "simple rape" qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2); and *United States v. Wilson,* 12 Fed.Appx. 172, 173 (4th Cir. 2001) (holding that a Michigan conviction for

attempted third degree sexual assault constitutes a crime of violence under U.S.S.G. § 4B1.2). Similarly, the case-law trend at the time of Mr. Ladwig's sentencing was that convictions under categorically overbroad burglary statutes qualified as ACCA predicate felonies under the residual clause. *See, e.g., Taylor v. United States,* 495 U.S. 575, 600 n. 9, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'") (quoting 18 U.S.C. § 924(e)(2)(B)(ii)); *United States v. Becker,* 919 F.2d 568 (9th Cir.1990) (holding that a conviction for burglary under California law falls under the residual clause of 18 U.S.C. § 16); *United States v. Lane,* 909 F.2d 895, 903 (6th Cir.1991) (holding that an Ohio burglary con-

explicit findings about which of the ACCA's three clauses qualified those convictions as predicate felonies. Utilizing the apt analogy to *Zant*, Mr. Ladwig has successfully demonstrated constitutional error simply by showing that the Court might have relied on an unconstitutional alternative when it found that Mr. Ladwig's prior convictions for burglary and attempted rape were violent felonies. That Mr. Ladwig's right to due process is at stake lends additional weight to this conclusion. In the context of a potential deprivation of such a critically important right, a showing that the sentencing court might have relied on an unconstitutional alternative ought to be enough to trigger inquiry into whether the sentencing court's consideration of that alternative was ultimately harmless. Because Mr. Ladwig has shown that the Court might have relied upon the unconstitutional residual clause in finding that his burglary and attempted rape convictions qualified as violent felonies, the Court finds that he has established constitutional error.

 Following the analogy to jury instructions, however, requires a determination of whether the error was harmless. *See Hedgpeth v. Pulido*, 555 U.S. 57, 58, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008). Pursuant to *Hedgpeth*, an error in this context is harmless unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (adopting the harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Applying that standard to Mr. Ladwig's case, consideration of the unconstitutional alternative—*i.e.* the residual clause—would be harmless only if the Court's finding that Mr. Ladwig's attempted rape and burglary convictions constitute violent felonies could be justified under one of the two remaining effective

clauses of the ACCA. In that case, the Court's "error" in considering the unconstitutional alternative would not have had the substantial and injurious effect required to find the error harmful because Mr. Ladwig would qualify as an armed career criminal even without the residual clause. But the Court cannot reach such a conclusion with respect to Mr. Ladwig— not only does the case law at the time of Mr. Ladwig's sentencing militate against it, *see* cases cited *supra* note 3, but as discussed below, *infra*, pp. 9-14, current case law prohibits it.

Second, the government contends that Mr. Ladwig's motion seeks, improperly, to utilize the retroactive holding in *Johnson* to obtain collateral review of his prior convictions under *Descamps*, which is widely regarded as not retroactive. *See, e.g., Ezell*, 778 F.3d at 767 (holding that *Descamps* did not announce a new rule of constitutional law); *In re Thomas*, No. 16–12065, 823 F.3d 1345, 1349, 2016 WL 3000325 at *3 (11th Cir. May 25, 2016) (same); *In re Jackson*, 776 F.3d 292, 296 (5th Cir.2015) ("Nothing in *Descamps* indicates that its holding announced a new rule that was constitutionally based, and *Descamps* did not announce that its holding applied retroactively on collateral review."); *Lockett v. Ives*, No. 14–30805, 2014 WL 4060176 at *3 (C.D.Cal. July 23, 2014) (collecting cases). But it is *Johnson*, and not *Descamps*, that negates Mr. Ladwig's status as an armed career criminal. Without *Johnson*, Mr. Ladwig would have no claim that he was not an armed career criminal, even if *Descamps* were never decided, because Mr. Ladwig's prior convictions would almost certainly have qualified as predicate felonies under the residual clause. *See* cases cited *supra* note 3. Only with *Johnson*'s invalidation of the residual clause could Mr. Ladwig reasonably argue

viction qualifies as a violent felony under the

residual clause of the ACCA).

that he is no longer eligible for the ACCA enhancement.

But the government's argument raises a valid point. Since the time Mr. Ladwig exhausted direct review over eight years ago, there have been a number of decisions interpreting the ACCA and the requirements of the categorical approach that have circumscribed the subset of crimes that fall within the elements and enumerated offenses clauses. *See, e.g., Johnson v. United States*, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (limiting "physical force" under the elements clause to *"violent* force—that is, force capable of causing physical pain or injury to another person." (emphasis in original)); *Descamps*, 133 S.Ct. at 2281–82 (prohibiting the use of the modified categorical approach to find prior convictions under categorically overbroad, indivisible statutes to be predicate offenses); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir.2015) (holding that the use of force must be intentional, rather than merely reckless or negligent, to qualify as a predicate offense under the elements clause). It would be improper, the government contends, to consider this case law in determining whether Mr. Ladwig was prejudiced by the residual clause (*i.e.* whether the residual clause "harmed" Mr. Ladwig by resulting in an improper armed career criminal designation). The argument is relatively simple. These "interim decisions" are statutory interpretation cases, which are not ordinarily considered retroactive, *see Ezell*, 778 F.3d at 767 (explaining that *Descamps* did not announce a constitutional rule because it is a statutory interpretation case that merely "clarifies when certain crimes qualify as violent felonies under the ACCA."). Because these decisions are not retroactive, the government claims, the Court should not consider their holdings when determining whether Mr. Ladwig was prejudiced.

■ Despite the argument's appealing simplicity, the Court does not agree. To begin, there is existing precedent for applying current case law when determining whether a constitutional error was harmless in the context of a motion under 28 U.S.C. § 2255. *See Lockhart v. Fretwell*, 506 U.S. 364, 371–72, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (concluding that the prejudice prong of a *Strickland*-based § 2255 claim may be made with the benefit of the law at the time the claim is litigated); *see also Mosby v. Senkowski*, 470 F.3d 515, 524 (2d Cir.2006) ("[T]he Supreme Court has held that current law should be applied retroactively for purposes of determining whether a party has demonstrated prejudiced under *Strickland's* second prong."). Moreover, and perhaps more importantly, considerations of public policy weigh strongly in favor of applying current law. Attempting to recreate the legal landscape at the time of a defendant's conviction is difficult enough on its own. But in the context of *Johnson* claims, the inquiry is made more difficult by the complicated nature of the legal issues involved. This area of the law has accurately been described as a "hopeless tangle," *Murray v. United States*, No. 96–CR–5367–RJB, 2015 WL 7313882 at *5 (W.D.Wash. November, 19, 2015), and has stymied law clerks and judges alike in a morass of inconsistent case law. An inquiry that requires judges to ignore intervening decisions that, to some degree, clear the mire of decisional law seems to beg courts to reach inconsistent results. Current case law has clarified the requisite analysis and applying that law should provide greater uniformity, helping to ensure that like defendants receive like relief. Indeed, when pressed at oral argument regarding these policy implications, the government acknowledged that its position required judges to ignore decisions that clarified grey areas of the law, precipitating potential inconsistency.

Because there is precedent for doing so, and in consideration of the aforementioned problems raised by applying old law, the Court will apply current case law to determine whether Mr. Ladwig's convictions qualify as predicate felonies without the residual clause.

## IV. Mr. Ladwig's Prior Convictions

Mr. Ladwig argues that neither his second degree burglary nor his attempted second degree rape conviction qualifies as a violent felony now that the residual clause has been invalidated. The government does not advance any arguments to the contrary.

▆▆ In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a "formal categorical approach" for determining whether a defendant's prior convictions qualify as predicate offenses under the ACCA. This approach requires a sentencing court to " 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.' " *Descamps v. United States,* —— U.S. ——, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013) (emphasis in original) (quoting *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143). If the categorical approach reveals that the elements of the prior conviction are the same as or narrower than the elements of the generic offense, then the statute is a categorical match, and every conviction under that statute qualifies as a violent felony. *Lopez–Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir.2015). But where a statute is "overbroad," meaning that it criminalizes conduct that goes beyond the elements of the generic offense, a Court must inquire further and determine whether the statute is divisible or indivisible. *Id.* If the statute is indivisible, the inquiry ends, "because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.* (emphasis in original) (quoting *Medina–Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir.2014). If a statute is both overbroad and divisible, however, the Court may employ what has been termed the "modified categorical approach," and consider a limited category of documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating. *Lopez–Valencia*, 798 F.3d at 867. Under the modified categorical approach, a prior conviction qualifies as a predicate offense only if those documents reveal that the defendant was convicted of a version of the crime that fits within the definition of the generic offense. *See Descamps*, 133 S.Ct. at 2284.

▆▆ A statute is divisible where it "lists multiple, alternative elements, and so effectively creates 'several different ... crimes.' " *Id.* at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009)). Where a statute lists alternative means of committing the crime, however, rather than alternative elements, a statute is considered indivisible. *Rendon v. Holder*, 764 F.3d 1077, 1084–85 (9th Cir.2014) ("The critical distinction is that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." (emphasis in original)).[4] As *Rendon* explains, the questions of divisibility and whether a particular statute lists alternative elements or alternative means, hinge on whether the jury must

---

4. On June 23, 2016, the Supreme Court issued its decision in *Mathis* which holds, like *Rendon*, that a statute which enumerates various factual means of committing a single element of the crime, rather than listing multiple elements disjunctively, precludes application of the modified categorical approach. *Mathis v. United States*, No. 15-6092, slip op. at 7-12

unanimously agree on the relevant fact(s). *Id.* at 1085. If the relevant state law makes clear that a defendant can be found guilty only if the jury unanimously agrees on which one of a statute's listed alternatives the defendant committed, the statute lists alternative elements, and is divisible. *Lopez–Valencia*, 798 F.3d at 868–69. If, on the other hand, the jury need not unanimously agree on which alternative the defendant employed to find him guilty, the statute lists alternative means and is indivisible.[5] *Id.*

### A. Attempted Second Degree Rape

■ Because rape is not included among the enumerated offenses, *see* 18 U.S.C. § 924(e)(2)(B)(ii) (listing burglary, arson, extortion, and offenses involving the use of explosives), and because, following *Johnson*, the residual clause is no longer valid, *see Johnson*, 135 S.Ct. at 2560, Mr. Ladwig's attempted second degree rape conviction would only qualify as a violent felony if the offense has "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i).

The Supreme Court has defined "physical force" in this context as "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140, 130 S.Ct. 1265. The use of force must also be intentional, not just reckless or negligent." *Dixon*, 805 F.3d at 1197.

At the time of Mr. Ladwig's conviction, Washington State defined second degree rape, in relevant part, as follows: A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person: (a) [b]y forcible compulsion. WASH. REV. CODE § 9A.44.050(1) (1991). "Forcible compulsion" is defined as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped. *Id.* at § 9A.44.010(6).

At the time of Mr. Ladwig's conviction, and indeed still today, WASH. REV. CODE § 9A.44.050(1)(a) criminalized conduct that does not involve the quantum of force required to qualify as a predicate offense under the elements clause. The force to which "forcible compulsion" refers "is not the force inherent in the act of penetration, but the force used or threatened to overcome or prevent resistance by the female." *State v. McKnight*, 54 Wash.App. 521, 774 P.2d 532, 535 (1989). In that context, the *McKnight* Court held that the litmus test for determining whether a defendant used or threatened the requisite level of force for second degree rape is whether the force used or threatened is greater than is "inherent in the act of intercourse." The use of such force need not be violent, because it need not be

---

**5.** The *Lopez–Valencia* court provides an excellent example that explains the intricacies of determining whether a particular statute is divisible or indivisible:

> Imagine a statute that criminalizes assault with "a gun or an axe." A federal law imposes penalties only for defendants previously convicted of "gun offenses." If state law makes clear that a defendant can be found guilty only if all twelve jurors agree that the defendant used a gun or if all twelve jurors agree the defendant used an

> axe, the statute has alternative elements and is divisible. The court may then apply the modified categorical approach to determine whether the defendant was accused and convicted of using a gun or an axe. If, however, the defendant can be convicted with six jurors believing the defendant used a gun and six jurors believing the defendant used an axe, the statute lists alternative means and is indivisible.

*Lopez–Valencia*, 798 F.3d at 869.

capable of causing physical pain or injury to another person to constitute "forcible compulsion." *See id.* at 535 (upholding a second degree rape conviction where the victim protested verbally, but did not physically resist, and the defendant slowly pushed the victim to a prone position on the couch and removed her clothes). Washington's second degree rape statute is thus, categorically overbroad.

Moreover, because the jury need not find at all, much less unanimously agree, that the defendant employed violent force, WASH. REV. CODE § 9A.44.050(1)(a) is indivisible. *See Rendon,* 764 F.3d at 1084–85 ("While the jury faced with a divisible statute must unanimously agree on the particular offense of which the [defendant] has been convicted (and thus, the alternative element), the opposite is true of indivisible statutes; the jury need not so agree."). This conclusion ends the inquiry because "a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Lopez–Valencia v. Lynch,* 798 F.3d at 867 (emphasis in original). Accordingly, Mr. Ladwig's second degree rape conviction is no longer a violent felony post-*Johnson.*

### B. Second Degree Burglary

■ At the time of Mr. Ladwig's conviction Washington's second degree burglary statute provided: "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle." WASH. REV. CODE. § 9A.52.030(1) (1986).

The statute defined building to include

... in addition to its ordinary meaning, any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building."

*Id.* at § 9A.04.110(5).

■ As the statutory definition of second degree burglary makes clear, none of the conduct criminalized by WASH. REV. CODE § 9A.52.030(1) has "as an element the use, attempted use, or threatened use of physical force against the person of another," and accordingly second degree burglary cannot qualify as a predicate offense under the elements clause. A defendant need not have used, attempted to use, or threatened to use physical force against another person for the jury to reach a verdict of guilty, he need only have entered or remained in a building unlawfully with the intent to commit a crime therein.

■ "Generic burglary" is defined under federal law as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. Washington's second degree burglary statute is overbroad because criminalizes a greater swath of conduct than the generic definition, namely, entry into areas that are not buildings or structures under federal law (*e.g.,* fenced areas, railway cars, and cargo containers). *See United States v. Wenner,* 351 F.3d 969, 972–73 (9th Cir.2003) ("Some things that are [buildings] under Washington law ... are not buildings or structures under federal law, and so cannot support a conviction for generic "burglary" under *Taylor.*"). WASH. REV. CODE § 9A.52.030(1) is also indivisible with respect to the building requirement because although a jury must decide unanimously that a defendant entered or remained unlawfully in one of the areas Washington defines as a "building," they need not agree which kind of "building." *See* 11A WASH. PRAC., PATTERN JURY INSTR. CRIM WPIC 60.04(1) (1977 & Supp. 1986) ("To convict the defendant of the crime of

burglary in the second degree ... the following element[ ] must be proved beyond a reasonable doubt: (1) [t]hat on or about [date] the defendant entered or remained unlawfully in a building."); *see also* 11 WASH. PRAC., PATTERN JURY INSTR. CRIM WPIC 2.05 (1977) ("Building, in addition to its ordinary meaning, includes any [dwelling], [fenced area], [railway car], [cargo container, [or any other structure used for lodging of persons] or [for carrying on business therein] or [for the use, sale or deposit of goods].")). As such, Washington's second degree burglary statute is both overbroad and indivisible, and accordingly cannot qualify as an ACCA predicate offense. *Lopez–Valencia v. Lynch*, 798 F.3d at 867 ("[A] conviction under an indivisible, overbroad statute can never serve as a predicate offense." (emphasis in original)).

## CONCLUSION

In light of *Johnson*, Mr. Ladwig's convictions for attempted second degree rape and second degree burglary no longer qualify as violent felonies. As such, his sentence is "in excess of the maximum authorized by law," *see* 28 U.S.C. § 2255(a), because he no longer has the sufficient number of ACCA predicate offenses to qualify for the statutory enhancement. Mr. Ladwig is therefore entitled to be resentenced.

Accordingly, **IT IS HEREBY OR-DERED:**

1. Defendant Craig Allen Ladwig's 28 U.S.C. § 2255 Motion to Vacate Sentence and for Immediate Release, **ECF No. 58**, is **GRANTED.**

2. Defendant's sentence, imposed pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), **ECF No. 29**, is **VACATED.**

3. Defendant **shall be released from the custody of the Bureau of Prisons without delay.**

4. The Bureau of Prisons is ordered to allow Defendant immediate telephone access in order to contact his defense counsel.

5. Defendant will be resentenced on **August 9, 2016 at 10:00 a.m., in Spokane, Washington.** Defendant must be present at the resentencing hearing.

6. An expedited Amended Presentence Investigation Report shall be prepared no later than fourteen days prior to resentencing reflecting this Court's ruling that Defendant is not eligible for a statutory enhancement under the Armed Career Criminal Act. Any objections or memorandum regarding sentencing shall be filed on an expedited basis and no later than seven days prior to resentencing.

7. The United States Probation Office shall assign a Pretrial Services Officer to supervise Defendant pending resentencing. Probation shall inform defense counsel of the officer assigned immediately.

8. Defendant shall be subject to the following presentencing conditions of release:

 a. Defendant shall not commit any offense in violation of federal, state, or local law. Defendant shall advise the supervising Pretrial Services Officer and defense counsel within one business day of any charge, arrest, or contact with law enforcement.

 b. Within five business days of his release, in consideration of the time it will take Defendant to travel to the Eastern District of Washington from Tucson, Defendant shall advise defense counsel and the assigned probation officer of his home address and telephone number. Defendant shall advise de-

fense counsel and the supervising Pretrial Services Officer in writing before any change in address or telephone number.

c. Defendant shall appear at all proceedings as required.

d. Defendant shall not possess a firearm, destructive device, or other dangerous weapon.

e. Within twenty-four hours of receiving the identity of his probation officer, Defendant shall contact his officer either telephonically or in person and shall report as often as directed.

f. Defendant shall refrain from the use or unlawful possession of a narcotic drug, or other controlled substance as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical provider. Defendant may not possess or use marijuana, regardless of whether Defendant has been prescribed a medical marijuana card.

9. Defense counsel has informed the Court that Bureau of Prisons will purchase a bus ticket for Defendant to allow him to travel from Tucson back to the Eastern District of Washington. In the event Defendant does not receive a bus ticket, he shall inform defense counsel or his assigned probation officer, who shall immediately notify the Court.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, the U.S. Probation Office, and the U.S. Marshals Service. Upon receipt, the U.S. Marshal Service **shall immediately serve a copy to the Bureau of Prisons.**