**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GABRIEL ALMANZA-ARENAS, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 09-71415 Agency No. A078-755-092 |

| | |
|---|---|
| GABRIEL ALMANZA-ARENAS, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 10-73715 Agency No. A078-755-092 ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc
September 10, 2015—San Francisco, California

Filed December 28, 2015
Amended February 29, 2016

Before: Sidney R. Thomas, Chief Judge and Ronald M. Gould, Richard C. Tallman, Johnnie B. Rawlinson, Jay S. Bybee, Consuelo M. Callahan, Sandra S. Ikuta, N. Randy Smith, Jacqueline H. Nguyen, Paul J. Watford and John B. Owens, Circuit Judges.

Order;
Opinion by Judge N.R. Smith;
Concurrence by Judge Owens;
Concurrence by Judge Watford

## SUMMARY[*]


### Immigration

The en banc court granted Gabriel Almanza-Arenas's petition for review of the Board of Immigration Appeals' published precedential decision, *Matter of Almanza-Arenas*, 24 I. & N. Dec. 771 (BIA 2009), which held that a conviction for vehicle theft under California Vehicle Code § 10851(a) constitutes a crime involving moral turpitude.

Applying *Descamps v. United States*, 133 S. Ct. 2276 (2013), the en banc court first held that § 10851(a) is overbroad and not a categorical match to the federal offense because it punishes conduct that both is and is not a crime of moral turpitude (CIMT). The en banc court next held that § 10851(a) is an indivisible statute because the intent element requires intent to either permanently or temporarily deprive

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

an owner of their vehicle, thus criminalizing conduct that both would and would not constitute a CIMT. While recognizing a circuit split as to whether, following *Descamps*, courts may look to state law to determine a statute's elements, the en banc court found that § 10851(a) is indivisible because under California law the two forms of intent are alternative means of accomplishing the same crime rather than two separate crimes.

Concurring, Judge Owens wrote that he joined the majority opinion because it correctly followed this court's precedent, but that he would find that the precedent is incorrect.

Concurring in the judgment, Judge Watford agreed that a conviction under § 10851(a) is not a CIMT, but disagreed with the majority's conclusion that the statute is indivisible. Judge Watford wrote that he would overrule *Rendon v. Holder,* 764 F.3d 1077 (9th Cir. 2014), because its divisibility analysis is inconsistent with *Descamps'* approach.

## COUNSEL

Mark C. Fleming (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts; Daniel Winik, Wilmer Cutler Pickering Hale and Dorr LLP, Washington D.C.; Michael J. Codner and Murray D. Hilts, Law Offices of Murray D. Hilts, San Diego, California, for Petitioner.

Leon Fresco, Deputy Assistant Attorney General (argued); Tony West, Assistant Attorney General; Leslie McKay, Assistant Director; Carol Federighi, Senior Litigation Counsel; Stefanie Notarino Hennes, Trial Attorney, United

States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

Jayashri Srikantiah, and Alison Kamhi, Immigrant's Rights Clinic, Mills Legal Clinic, Stanford Law School, Stanford, California; Manuel Vargas and Isaac Wheeler, Immigrant Defense Project, New York, New York, for Amicus Curiae Immigrant Defense Project, National Immigration Project of the National Lawyers Guild, Immigrant Legal Resource Center, and Federal Defenders of San Diego.

Charles Roth, National Immigrant Justice Center, Chicago, Illinois; Matt Adams, National Immigrant Rights Project, Seattle, Washington; Benjamin R. Casper, University of Minnesota Law School, Center for New Americans, Federal Immigration Litigation Clinic, Minneapolis, Minnesota; Northwest Immigrant Rights Project, Seattle, Washington, for Amici Curiae the National Immigrant Justice Center and the Northwest Immigrant Rights Project.

Vincent J. Brunkow, Reuben Camper Cahn, and Kara Hartzler, Federal Defenders of San Diego, Inc., San Diego, California, for Amici Curiae the Ninth Circuit Federal Defenders and Community Defenders, the California Public Defenders Association and individual California Public Defender Offices, and National Association of Criminal Defense Lawyers.

Devin T. Theriot-Orr and Ralph Hua, Gibbs Houston Pauw, Seattle, Washington, for Amici Curiae American Immigration

Lawyers Association, Immigrant Defense Project, Immigrant Legal Resource Center, National Immigration Project of the National Lawyers Guild, the University of California Davis School of Law Immigration Law Clinic, Community Legal Services in East Palo Alto, Detention Watch Network, the Florence Immigrant and Refugee Rights Project, the National Immigration Law Center, and Public Counsel.

## ORDER

The Opinion filed on December 28, 2015, is amended as follows:

on slip Opinion page 5–6, footnote 1, please substitute the following text:

For purposes of cancellation of removal, Almanza alleges that he arrived in the United States in 1989. Neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA") addressed whether Almanza accrued the ten years of physical presence needed to qualify for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(A), and therefore neither do we. *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).

With this amendment, the Petitioner's Unopposed Motion to Amend Opinion is **GRANTED**. No petition for rehearing or rehearing en banc was filed within the original time period, and that time period has now expired. No subsequent petitions for rehearing or rehearing en banc shall be filed.

## OPINION

N.R. SMITH, Circuit Judge, joined by THOMAS, Chief Judge, and GOULD, TALLMAN, RAWLINSON, BYBEE, CALLAHAN, IKUTA, NGUYEN, and OWENS, Circuit Judges:

California Vehicle Code § 10851(a) is an indivisible statute, criminalizing both conduct that would and would not constitute a crime involving moral turpitude. Therefore, section 10851(a) cannot be a categorical match to a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). Thus, we grant the petitions and remand for further proceedings, because a conviction under this statute does not render a petitioner ineligible for cancellation of removal.

## I. FACTS AND PROCEDURAL HISTORY

Gabriel Almanza-Arenas ("Almanza") is a native and citizen of Mexico. Almanza last entered the United States without being admitted or paroled in October 2000.[1] In February 2005, the Department of Homeland Security ("DHS") issued a Notice to Appear, alleging that Almanza was removable because he was not properly admitted or paroled to the United States. On July 21, 2005, Almanza admitted the truth of the factual allegations in the Notice to Appear and conceded his removability. However, Almanza

---

[1] For purposes of cancellation of removal, Almanza alleges that he arrived in the United States in 1989. Neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA") addressed whether Almanza accrued the ten years of physical presence needed to qualify for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(A), and therefore neither do we. *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).

orally requested 8 U.S.C. § 1229b cancellation of removal at the hearing (and thereafter filed a written application in January 2006) and alternatively requested voluntary departure.**[2]**

In his application for cancellation of removal, Almanza disclosed that he pleaded guilty to a misdemeanor violation of California Vehicle Code § 10851(a) (under *People v. West*, 477 P.2d 409 (Cal. 1970)**[3]**) on September 12, 2000. The parties agree that California Vehicle Code § 10851(a) punishes both permanently depriving (which is a crime of moral turpitude) and temporarily depriving (which is not a crime of moral turpitude) an owner of his or her vehicle. *People v. Garza*, 111 P.3d 310, 315 (Cal. 2005).

Thus, the IJ held a hearing regarding Almanza's eligibility for cancellation of removal and voluntary departure. At the hearing, the DHS argued that Almanza's

---

**[2]** Because Almanza filed his application for cancellation of removal after May 11, 2005, the REAL ID Act applies. *See* Real ID Act of 2005, Pub. L. No. 109–13, § 101(h)(2), 119 Stat. 231, 305 (codified in scattered sections of 8 U.S.C.) (Provisions of the REAL ID Act apply to "applications for . . . relief from removal made on or after" May 11, 2005). Almanza argues that the REAL ID Act should not apply because he was in removal proceedings prior to this date. There is no authority to support this argument; application of the REAL ID Act is based on the filing date of the application for cancellation of removal. *See Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010).

**[3]** A *West* plea is "a plea of nolo contendere, not admitting a factual basis for the plea. Such a plea, also referred to as an *Alford* plea, based on *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970), allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence." *People v. Rauen*, 133 Cal. Rptr. 3d 732, 734 (Cal. Ct. App. 2011) (internal quotation marks and footnote omitted).

conviction disqualified him from cancellation of removal because a conviction for violation of California Vehicle Code § 10851(a) presents a crime involving moral turpitude. The DHS also placed into evidence three state court documents: (1) a felony complaint charging Almanza with a violation of California Vehicle Code § 10851(a);**[4]** (2) a copy of Almanza's September 12, 2000 guilty plea (pursuant to *People v. West*, 477 P.2d at 410) to a misdemeanor violation of California Vehicle Code § 10851(a); and (3) a judgment showing that Almanza received a sentence of twenty-four days time served. Neither party placed the transcript of Almanza's plea colloquy for this conviction into evidence.**[5]**

After the hearing, the IJ denied Almanza's petition for cancellation of removal. The IJ found that Almanza had not met his burden of proof to show eligibility for cancellation of removal, because he had not shown that he was convicted of the lesser "temporary" offense in section 10851(a).

The BIA affirmed the IJ's holding and dismissed Almanza's appeal in a published decision. *Matter of Almanza-Arenas*, 24 I. & N. Dec. 771 (B.I.A. 2009). The

---

**[4]** The Complaint alleged in Count 1 that Almanza "did unlawfully drive and take a vehicle, . . . without the consent of and with intent either permanently or temporarily to deprive the owner of title and possession of said vehicle, in violation of VEHICLE CODE SECTION 10851(a)." The submitted Complaint crossed out one name and leaves the name "Raul Almanza." Despite the reference to the wrong name, Almanza does not dispute that the submitted Complaint was the basis of his guilty plea.

**[5]** The IJ asked Almanza whether he was in the process of obtaining the transcript of the plea colloquy. Almanza did not present the transcript and argued that its admission was not necessary given his *West* plea (which is made without any admission to the facts).

BIA concluded that, because Almanza's application for relief was filed after May 11, 2005, the REAL ID Act applied to his case. *Id*. at 774. The BIA concluded that the conviction record before the IJ was ambiguous, and it was Almanza's duty to produce evidence (including the requested plea colloquy) that he did not commit a crime involving moral turpitude because he had the burden of proof. *Id*. In particular, the BIA concluded Almanza did not meet his burden of proof of showing eligibility for cancellation of removal, because he did not produce more specific evidence (as the IJ requested) to show that he did not intend to permanently deprive the owner of his or her vehicle.[6] *Id*. at 774–76.

Petitioner timely petitioned for review.[7] A three judge panel granted the petition. *Almanza-Arenas v. Holder*, 771 F.3d 1184 (9th Cir. 2014). We then granted rehearing en banc. *Almanza-Arenas v. Lynch*, 785 F.3d 366 (9th Cir. 2015).

---

[6] Because we conclude that section 10851(a) is indivisible, we do not reach the issue of whether Almanza met his burden of proof.

[7] Almanza's petition for review included his motion for reconsideration, requesting that the BIA consider whether his offense qualified under the petty offense exception in INA § 212(a)(2)(A)(ii), 8 U.S.C. § 1182(a)(2)(A)(ii), and whether the offense is described in INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i). The BIA denied Almanza's request for reconsideration, concluding that "[e]ven though the conviction is not 'described under' section 212(a)(2) of the Act because it falls under the petty offense exception, the respondent has been convicted of an offense 'described under' section 237(a)(2) of the Act." Because we conclude that section 10851(a) is categorically not a crime involving moral turpitude, we do not address whether the petty offense exception is applicable in the context of cancellation of removal.

## II. ANALYSIS

To determine whether section 10851(a) is a crime involving moral turpitude, we apply the three-step process set forth in *Descamps v. United States*, 133 S. Ct. 2276 (2013):

> At the first step, we compare the elements of the state offense to the elements of the generic offense defined by federal law. If this "categorical approach" reveals that the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as [a crime involving moral turpitude]. When a statute is "overbroad," meaning that it criminalizes conduct that goes beyond the elements of the federal offense, we turn to step two: determining whether the statute is "divisible" or "indivisible." If the statute is indivisible, "our inquiry ends, because a conviction under an indivisible, overbroad statute can never serve as a predicate offense." Only when a statute is overbroad and divisible do we turn to step three—the "modified categorical approach." At this step, we may examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating.

*Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015) (internal citations omitted).

## A.  *Step One: Compare Elements of the State Offense to the Elements of the Federal Generic Offense.*

To determine whether a state criminal statute is categorically a crime involving moral turpitude, we use a two-step process, each step with a different standard of review.  *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013).  "The first step is to identify the elements of the statute of conviction."  *Id*.  We review this step de novo, because "the BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes."  *Id*. (alteration and citation omitted).  "The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition."  *Id*.  We review this step following the *Chevron* framework and defer to the BIA's conclusion if warranted. *Id.*; *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

To identify the elements of California Vehicle Code § 10851(a), we apply California rules of statutory construction.  *Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1092 (9th Cir. 2001).  "Under California law, the cardinal rule of statutory construction is to determine the intent of the legislature."  *Id*.  We therefore determine intent by first looking "to the language of the statute and giv[ing] effect to its plain meaning."  *Id.*  "If the intent of the legislature is not clear from the language of the statute, legislative history may be considered."  *Id*.  California Vehicle Code § 10851(a) (2000) provides:

> Any person who drives or takes a vehicle not his or her own, without the consent of the

owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of [unlawfully taking or driving a vehicle.[8]]

The language of the statute shows that there are three elements of this offense: (1) a person drove or took a vehicle not his or her own; (2) the owner did not provide consent to drive or take his or her vehicle; and (3) the person drove or took the vehicle with intent either to permanently or temporarily deprive the owner, whether with or without intent to steal the vehicle. The last element of section 10851(a) (relevant here) criminalizes the driving or taking of a vehicle without consent regardless of whether the individual had the "intent to either permanently or temporarily deprive the owner" of his or her vehicle.

Comparing section 10851(a) to the generic definition of a crime involving moral turpitude, we look to see if the crime is "vile, base, or depraved" and "violates accepted moral standards." *Ceron v. Holder*, 747 F.3d 773, 779 (9th Cir. 2014) (en banc) (quoting *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012)). Although section 10851(a) is generally considered to be a theft offense, *see Duenas-Alvarez*, 733 F.3d at 814, not all "theft" offenses are crimes involving moral turpitude. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159 (9th Cir. 2009). Instead, "[t]he BIA has

---

[8] We acknowledge that section 10851(a) is divisible to the extent that it also pertains to a person who is an accessory or an accomplice. *Duenas-Alvarez v. Holder*, 733 F.3d 812, 814 (9th Cir. 2013). However, Almanza was not convicted of that portion of the statute.

held in a number of cases that a theft offense is not categorically a crime of moral turpitude if the statute of conviction is broad enough to criminalize a taking with intent to deprive the owner of his property only temporarily." *Id.*; *see also Matter of M-*, 2 I. & N. Dec. 686, 686 (B.I.A. 1946) (holding joyriding is not a crime involving moral turpitude); *Matter of D-*, 1 I. & N. Dec. 143, 143, 145 (B.I.A. 1941) (holding that driving an automobile without the consent of the owner is not a crime involving moral turpitude). As a result, section 10851(a) punishes conduct that is categorically a crime of moral turpitude (permanently depriving) and conduct that is not categorically a crime of moral turpitude (temporarily depriving). Because section 10851(a) is "overbroad" and "criminalizes conduct that goes beyond the elements of the federal offense," it is not a categorical match. *See Lopez-Valencia*, 798 F.3d at 867–68. We must then turn to step two.

## B.  *Step Two: Is the Statute Divisible or Indivisible?*

Step two requires us to determine whether section 10851(a) is a divisible or indivisible statute. In other words, we must determine whether section 10851(a) has "multiple, alternative elements, and so effectively creates 'several different crimes.'" *Descamps*, 133 S. Ct. at 2285 (alteration omitted) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). If it has alternative elements, it is divisible and we continue to step three—the modified categorical approach. Alternatively, if section 10851(a) has a "single, indivisible set of elements" with different means of committing one crime, then it is indivisible and we end our inquiry, concluding that

there is no categorical match to the generic federal offense. *Id.* at 2286.**[9]**

Our specific inquiry here is whether section 10851(a)'s "intent" element (to permanently or temporarily deprive) is divisible or indivisible. We therefore must determine whether the text of section 10851(a) sets forth elements or means. We do this by first looking to the plain language of the statute.

### 1. Elements versus Means.

Divisibility, like element identification, is reviewed de novo, because it "is a purely legal question which does not require any additional fact-finding." *Medina-Lara v. Holder*, 771 F.3d 1106, 1117 (9th Cir. 2014); *Ceron*, 747 F.3d at 778 (noting that we review element identification de novo, "[b]ecause the BIA lacks expertise in identifying the elements of state statutes"). Therefore, we owe no deference to the BIA's conclusion (without analysis) that section 10851(a) was divisible. *See Matter of Almanza-Arenas*, 24 I. & N. Dec. at 774.

As outlined in *Descamps*, we distinguish indivisible statutes from divisible statutes by determining whether the statutes provide multiple, alternative means of committing the crime. *See* 133 S. Ct. at 2285. In *United States v. Cabrera-Gutierrez*, we determined that if the elements of the crime are alternative to each other—not the mode or means of proving

---

**[9]** At this point in the analysis, Judge Watford mistakenly parts from *Descamps* precedent, instead basing his concurrence on "multiple ways a particular element can be satisfied" without authority for such departure. *See* Concurring Op. 30 (Watford, J.).

an element of the crime—the statute is divisible. 756 F.3d 1125, 1135–37 & n.16 (9th Cir. 2013).

In *Richardson v. United States*, 526 U.S. 813 (1999) (upon which *Descamps* relied), the Supreme Court made it clear that elements are different than means. It held:

> If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

*Id*. at 818. Therefore, a single element must be part of a charged offense with which a jury necessarily found the defendant guilty. *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (holding that when a statute includes entry of a building or automobile, the modified approach can only be used "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict"); *see also Descamps*, 133 S. Ct. at 2288 ("The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances.").

*Richardson* makes clear that the first step in determining elements versus means (and thus divisibility) begins with the text of the statute of conviction.[10]  526 U.S. at 818.  The text of section 10851(a), as noted above, presents three indivisible elements.    Although section 10851(a) uses disjunctive phrasing in two of the three elements, the use of "or" does not create additional elements.[11]  Rather, the disjunctive phrasing creates different means of committing the one offense.  The first element can be completed by either driving a vehicle *or* taking a vehicle (which vehicle belongs to another person).  The second element can be completed by driving or taking the vehicle without the consent of the owner.  The third element (the element at issue here) can be completed by either permanently *or* temporarily depriving the owner of his or her vehicle.  The means or methods of committing the element of the offense do not make the statute divisible, because the trier of fact does not need to agree as to whether the deprivation was temporary or permanent (the length of time during which the deprivation occurred).  Thus, section 10851(a) is an indivisible statute.

---

[10] Judge Watford mistakenly suggests that the majority opinion is instead "predicated on the same reasoning our court adopted in *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014)."  *See* Concurring Op. 27 (Watford, J.).  To the contrary, our decision derives from Supreme Court precedent.  To the extent the *Rendon* decision agrees with our decision, it remains circuit precedent.

[11] The mere use of the disjunctive term "or" does not automatically make a statute divisible.  *See Rendon*, 764 F.3d at 1085–86 (concluding that when a state statute "is written in the disjunctive . . . that fact alone cannot end the divisibility inquiry"); *see also United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014); *United States v. Pate*, 754 F.3d 550, 554–55 (8th Cir.), *cert. denied*, 135 S. Ct. 386 (2014); *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014); *United States v. Royal*, 731 F.3d 333, 341–42 (4th Cir. 2013).

We confirm this statutory interpretation by first examining the *Shepard* documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime.[12]  *See Descamps*, 133 S. Ct. at 2285 n.2 ("When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense."). Here, an examination of the *Shepard* documents confirms our conclusion that section 10851(a) is indivisible.  The indictment charges that Almanza violated section 10851(a) by taking the car "with intent either permanently or temporarily to deprive the owner" of the car.  Prosecutors may not charge a defendant in the disjunctive, as the indictment did here, if they are charging two separate offenses.[13]  *See The Confiscation Cases*, 87 U.S. (20 Wall.) 92, 104 (1874) ("[A]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or

---

[12] Prior to *Descamps*, Judge Watford may have been correct that we should not look at *Shepard* documents prior to a determination of divisibility.  However, a crime is only divisible if it includes alternative elements not alternative means.  *See Descamps*, 133 S. Ct. at 2288.  Thus, after *Descamps*, the Supreme Court allows us to look at *Shepard* documents to confirm the determination of the statute's elements (and thereby its divisibility).  *Descamps*, 133 S. Ct. at 2285 n.2.  Here, we look to *Shepard* documents merely "as a tool for implementing the categorical approach."  *Cf. id.* at 2284.

[13] We are mindful that prosecutors' charging documents do not always charge a defendant properly.  In some instances, prosecutors may fail to "select the relevant element[s] from its list of alternatives," *Descamps*, 133 S. Ct. at 2290, or may include the specific means of committing the offense out of convenience.  We are also mindful that defendants may plead to these imprecisely charged indictments or informations without alteration.  Therefore, the divisibility analysis may not end after looking to *Shepard* documents.

of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient."). As noted in *Descamps*, "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." 133 S. Ct. at 2290. Thus, when reviewing the *Shepard* documents, a court can discover what the prosecutor included as elements of the crime and to what elements the petitioner pleaded guilty. Therefore, because the indictment charged Almanza with having intent either to permanently deprive or temporarily deprive the owner, the indictment reveals that (under state law) the two forms of intent are alternative means of accomplishing the same crime instead of two separate crimes. Section 10851 is therefore an indivisible statute.[14]

Even though the plain language of the statute is confirmed by the *Shepard* documents (section 10851(a) only has three elements), the BIA found (and the government argued) that the statute is divisible because the intent element was written in the disjunctive. Therefore, to further support our analysis, we verify that our interpretation of section 10851(a)'s intent element is the same as the interpretation of the California

---

[14] The Supreme Court has cautioned us not to engage in judicial factfinding. *See James v. United States*, 550 U.S. 192, 214 (2007), *overruled on separate grounds by Johnson*, 559 U.S. 133. "[B]y applying *Taylor*'s categorical approach, we [have avoided] any inquiry into the underlying facts of [Almanza's] particular offense, and have looked solely to the elements of [section 10851(a)] as defined by [California] law." *Id*. Under Judge Watford's approach, it seems anything written in the disjunctive (whether elements or means) is divisible regardless of whether a jury necessarily had to find a defendant committed the element of the offense beyond a reasonable doubt. Rather than treating everyone (who has committed an offense under § 10851(a)) equally, he mistakenly would look to the facts of each case to see if he can discover the means of how the person committed the offense. *See* Concurring Op. 35 (Watford, J.).

courts.[15]  As the Supreme Court has counseled, if the state courts have addressed the issue, "we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law."[16]  *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion); *see also Albertson v. Millard*, 345 U.S. 242, 244 (1953) (per curiam) ("The construction given to a state statute by the state courts is binding upon federal courts.").  We look to a state's laws to determine whether that state's courts "have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime."  *Schad*, 501 U.S. at 636.  Therefore, we must verify that our interpretation of elements versus means is consistent with how California would instruct a jury as to this offense.

## 2.  Application of State Law

Looking to state law to determine a state's interpretation of its own statutes is nothing new.  In *Descamps*, the Supreme Court looked to state law to confirm the statute's plain text that California did not require a "breaking and entering."

---

[15] *Descamps* does not preclude us from looking to state law to determine whether the statute is indivisible after we have examined the *Shepard* documents.  *See Descamps*, 133 S. Ct. at 2285 n.2.

[16] Looking to state court precedent or to a state's pattern jury instructions (which are based on that state's general law) solely to verify how a state instructs a jury as to the elements of a state offense is consistent with the Supreme Court's mandate "to treat every conviction of a crime in the same manner."  *Descamps*, 133 S. Ct. at 2287.  The Supreme Court made it clear, we are not "to explore whether a person convicted of one crime could also have been convicted of another, more serious offense."  *Id*. at 2292.  "[T]hat circumstance-specific review is just what the categorical approach precludes."  *Id.*

*Descamps*, 133 S. Ct. at 2282 (citing *People v. Barry*, 29 P. 1026, 1026–27 (Cal. 1892)). The Supreme Court also applied this framework in *Johnson v. United States*, 559 U.S. 133 (2010). In that case, the defendant had a previous conviction of simple battery under Florida law, Fla. Stat. § 784.03(1)(a). 559 U.S. at 136. Johnson objected to the conviction being classified as a violent felony. *Id*. In determining the elements of the crime, the Supreme Court concluded that there were three ways the prosecution could prove a battery, citing to state law. *Id*. ("Because the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways." (citing *State v. Hearns*, 961 So. 2d 211, 218 (Fla. 2007))).

We similarly looked to the state interpretation of its own statute in two of our recent cases, *Rendon v. Holder*, 764 F.3d 1077, and *Chavez-Solis v. Lynch*, 803 F.3d 1004 (9th Cir. 2015). In *Rendon*, after concluding that the statute was not a categorical match, we turned to the second step to determine divisibility. 764 F.3d at 1084. The statute's text did not provide a clear answer to which parts of the statute were means versus elements; therefore, we looked to state law to determine whether the statute contained alternative elements rather than alternative means. *Id*. at 1088–89. In *Chavez-Solis*, we interpreted a disjunctively worded statute. 803 F.3d at 1013. We looked to the pattern jury instructions/state law to assess the divisibility of the statute (i.e., what elements a jury must unanimously agree on). *Id*. After review of the state law, we concluded that California's statute was indivisible because "California juries are not required to unanimously agree on what sexual conduct appears in a particular image in order to convict a defendant of possession of child pornography." *Id*.

Several of our sister circuits have also looked to state law to verify whether a state statute has elements or means. For instance, in *United States v. Pate*, the Eighth Circuit concluded that the term "flee," which was defined to mean "increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer" was indivisible, despite its disjunctive text. 754 F.3d at 554–55. Relying on Minnesota state law and practice jury instruction guides, the Eight Circuit concluded that "the statute does not require the factfinder (whether jury or judge) to determine *how* the defendant fled (i.e., the means of flight) because the *method* used to flee the peace officers is not an element of the crime." *Id.* at 554 (internal quotation marks and citations omitted). The Fourth Circuit similarly concluded that it must look to how courts "generally instruct juries" with respect to the statute at issue. *See Omargharib*, 775 F.3d at 199.

We recognize that not all of our sister circuits agree that courts should look to state law to determine a statute's elements following *Descamps*. *See United States v. Trent*, 767 F.3d 1046, 1061 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 1447 (2015); *Franco-Casasola v. Holder*, 773 F.3d 33, 37–38 (5th Cir. 2014) ("[A] divisible statute is one defined 'alternatively, with one statutory phrase corresponding to the generic crime and another not.'" (quoting *Descamps*, 133 S. Ct. at 2286)).[17] In *Trent*, the Tenth Circuit questioned whether the Supreme Court meant to use the term "elements" in the "traditional sense." 767 F.3d at 1061. The *Trent* court effectively suggested that the difference between elements

---

[17] The Fifth Circuit has not addressed the elements versus means distinction, but rather seems to apply the modified approach to all disjunctive subsections.

and means under *Descamps* is a distinction without a difference, because the Supreme Court limited a court's ability to determine whether a statute is divisible by solely looking at the *Taylor* and *Shepard* documents (indictment, jury instructions, plea colloquy, and plea agreement). *Id*. (citing *Descamps*, 133 S. Ct. at 2285 n.2).[18] The *Trent* court recognized that its analysis could be flawed and continued its analysis using the traditional elements and means definitions supplied by *Richardson* and *Schad*. *See id*.

This circuit split arises from a disagreement regarding the meaning of footnote 2 in *Descamps*. *See Descamps*, 133 S. Ct. at 2285 n.2. In responding to Justice Alito's dissent, criticizing the majority's nuances concerning elements versus means, the *Descamps* majority provided:

> And if the dissent's real point is that distinguishing between "alternative elements" and "alternative means" is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in *Taylor* and *Shepard*—*i.e.*, indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the

---

[18] Judge Watford agrees with these sister circuits and would treat elements and means interchangeably. His approach does not seem to narrow the range of cases where we can look beyond the statutory elements. *See Descamps*, 133 S. Ct. at 2283–84. Instead, it sets our analysis back to almost where we were pre-*Descamps*, inventing ways to make a statute divisible.

> alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

*Id*.  We read this footnote as a guide to courts to look at *Taylor* and *Shepard* documents if there were difficulty in distinguishing between the elements and means and what a jury necessarily would have to unanimously conclude.[19]  The Supreme Court is clear:  "Whatever a statute lists (whether *elements* or *means*), the documents we approved in *Taylor* and *Shepard* . . . would reflect the crime's *elements*. . . . When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the *elements* revealed there to those of the generic offense."  *Id.* (emphasis added).  This statement is consistent with the Supreme Court's instruction that the modified approach "acts not as an exception, but instead as a tool.  It retains the

---

[19] Although we are mindful of the Supreme Court's warning that "a court need not parse state law" to determine elements versus means, *Descamps*, 133 S. Ct. at 2285 n.2, we do not interpret *Descamps* to suggest that we can never look to state law.  In *Descamps*, the Supreme Court rejected the government's argument that the element of "enters," Cal. Penal Code § 459, was divisible by finding contradictory case law.  *Id*. at 2291.  The Supreme Court reserved the question of whether a "court should take account not only of the relevant statute's text, but of judicial rulings interpreting it."  *Id*.  In this context, however, the reservation seems limited to unmentioned elements.  *See id*. at 2296–97 (Alito, J., dissenting) (noting that "courts sometimes find that unmentioned elements are implicit").  The *Descamps* decision (which was not based on a disjunctively worded statute) does not purport to overrule prior precedent that allows a court to look to state law to determine whether the statute of conviction contains elements or means when it is phrased in the disjunctive.  Rather, it only precludes courts from "parsing state law" in order to reach a desired result.  *See id*. at 2285 n.2.

categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id*. at 2285. This explanation cannot be read to suggest that elements and means are one and the same. If the Supreme Court wanted to say that there was no material difference between the two terms, it knew how to do so. Thus, means or methods of committing an offense, in this context, is nothing more than focusing on the facts, which we are forbidden to do in a categorical analysis.

Determining the elements of section 10851(a), as defined by California law, we need not go beyond California's pattern criminal jury instructions[20] ("CALJIC") (in effect at the time Almanza pleaded guilty).[21] CALJIC 14.36 provides the appropriate instruction for persons who are charged with violating California Vehicle Code § 10851(a). It provides that a jury must find the following elements of the crime:

> 1. A person took or drove a vehicle belonging to another person;

---

[20] Jury instructions are *Shepard* "approved" documents only when they are submitted in the underlying action as part of the record. *Shepard v. United States*, 544 U.S. 13, 20–21 (2005). Jury instructions do not exist in this case where Almanza pleaded guilty.

[21] The use of the pattern CALJIC jury instructions is "not mandated by statute, [but] their use is recommended by the Judicial Council of California (Cal. Standards Jud. Admin., § 5)." *People v. Prettyman*, 926 P.2d 1013, 1021 (Cal. 1996). "[T]he Judicial Council has recommended their use, when applicable, 'unless the trial judge finds that a different instruction would more adequately, accurately or clearly state the law.'" *Mitchell v. Gonzales*, 819 P.2d 872, 884 n.2 (Cal. 1991) (Kennard, J., dissenting) (alteration omitted) (citing Cal. Standards Jud. Admin., § 5)).

2. The other person had not consented to the taking or driving of [his] [her] vehicle; and

3. When the person took or drove the vehicle, [he] [she] had the specific intent to deprive the owner either permanently or temporarily of [his] [her] title to or possession of the vehicle.

This jury instruction makes clear that California law treats the disjunctive phrases in the statute as means of committing the offense not separate elements creating new crimes. Therefore, the distinction between whether Almanza intended to permanently or temporarily deprive the owner of his or her vehicle need not be determined by an unanimous jury. Thus, section 10851(a) is an indivisible statute.

This conclusion ends our inquiry; we need not proceed to step three. We have "examine[d] what the state conviction necessarily involved, not the facts underlying the case, [and] we must presume that the conviction rested upon nothing more than the *least* of the acts criminalized." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks and alterations omitted) (emphasis added). Because the least of the acts criminalized under section 10851(a) is a temporary taking, the statute is not categorically a crime involving moral turpitude.

The petitions for review are **GRANTED**, and the matter is **REMANDED** to the BIA for further proceedings.

OWENS, Circuit Judge, joined by TALLMAN, BYBEE, and CALLAHAN, Circuit Judges, concurring:

We should no longer tinker with the machinery of *Descamps*.

While I join the majority opinion because it correctly applies our precedent, I do not agree that our precedent is correct. Under the current framework, hardened criminals avoid removal due to the vagaries of one state's law, while much softer individuals get shipped overseas because of the indictment template used in a different office. The only consistency in these cases is their arbitrariness. The bedeviling "modified categorical approach" will continue to spit out intra- and inter-circuit splits and confusion, which are inevitable when we have hundreds of federal judges reviewing thousands of criminal state laws and certain documents to determine if an offense is "categorically a crime involving moral turpitude." Almost every Term, the Supreme Court issues a "new" decision with slightly different language that forces federal judges, litigants, lawyers and probation officers to hit the reset button once again.

A better mousetrap is long overdue. Rather than compete with Rube Goldberg, we instead should look to a more objective standard, such as the length of the underlying sentence, before deciding if someone should be removed from our country. While no regime is foolproof, this approach cannot be worse than what we have now.

To make this happen, we need Congress's attention. And to get Congress's attention, the Supreme Court may need to wipe the slate clean by junking the current state of law. *See Johnson v. United States*, 135 S. Ct. 2551, 2560 (2015)

("Nine years' experience trying to derive meaning from the residual clause [of the Armed Career Criminal Act] convinces us that we have embarked upon a failed enterprise.").[1]

We are way past that here.

---

WATFORD, Circuit Judge, concurring in the judgment:

I agree that Gabriel Almanza-Arenas' conviction under California Vehicle Code § 10851(a) is not a conviction for a crime involving moral turpitude. But I disagree with the court's conclusion, predicated on the same reasoning our court adopted in *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), that § 10851(a) is an "indivisible" statute. I would overrule *Rendon*, as I think its approach to divisibility analysis is inconsistent with the approach required by *Descamps v. United States*, 133 S. Ct. 2276 (2013). I will be the first to admit, though, that the correct reading of *Descamps* (and in particular its footnote 2) is open to debate, as reflected by the clash between the panel's opinion in *Rendon* and the opinions dissenting from our refusal to rehear

---

[1] *See also Descamps v. United States*, 133 S. Ct. 2276, 2294 (2013) (Kennedy, J., concurring) ("If Congress wishes to pursue its policy in a proper and efficient way without mandating uniformity among the States with respect to their criminal statutes for scores of serious offenses, and without requiring the amendment of any number of federal criminal statutes as well, Congress should act at once."); *United States v. Fish*, 758 F.3d 1, 18 (1st Cir. 2014) (noting that "the great variation between the different states' criminal statutes has flummoxed the federal courts" and that the duty to determine whether a prior conviction qualifies as a predicate offense "seems a better fit for Congress or an administrative agency" than a court).

that case en banc.[1]   Given how frequently questions of
divisibility arise, in both the criminal and immigration
contexts, we need a clear and easy-to-apply rule for
distinguishing between statutes that are divisible and those
that are not.  If not in this case then hopefully in another case
soon, the Supreme Court will step in to provide further
guidance.

I

The only question before us is whether Almanza-Arenas'
conviction under § 10851(a) counts as a conviction for a
crime involving moral turpitude under the cancellation of
removal statute.  To answer that question, we use the so-
called "categorical approach," which requires us to compare
the elements of the statute under which the petitioner was
convicted to the elements of the relevant generic offense to
see if the two sets of elements are a categorical match.
*Descamps*, 133 S. Ct. at 2281.  The first step is to identify the
elements of the statute of conviction, and in our case that's
easy to do.  California Vehicle Code § 10851(a), as relevant
here, provides as follows:  "Any person who drives or takes
a vehicle not his or her own, without the consent of the owner
thereof, and with intent either to permanently or temporarily
deprive the owner thereof of his or her title to or possession
of the vehicle . . . is guilty of a public offense . . . ."  For our
purposes, the statute has three elements: (1) the *actus reus*,

---

[1] *See Rendon v. Holder*, 782 F.3d 466, 467–73 (9th Cir. 2015) (Graber,
J., dissenting from denial of rehearing en banc); *id.* at 473–74 (Kozinski,
J., dissenting from denial of rehearing en banc); *see also United States v.
Mathis*, 786 F.3d 1068, 1074–75 & n.6 (8th Cir. 2015); *Omargharib v.
Holder*, 775 F.3d 192, 198–200 (4th Cir. 2014); *id.* at 200–02 (Niemeyer,
J., concurring); *United States v. Trent*, 767 F.3d 1046, 1058–63 (10th Cir.
2014); *United States v. Howard*, 742 F.3d 1334, 1343–49 (11th Cir. 2014).

which can be satisfied by either driving or taking a vehicle belonging to someone else; (2) the attendant circumstance that the taking or driving be without the owner's consent; and (3) the *mens rea*, which can be satisfied by intending either to permanently or temporarily deprive the owner of the vehicle.

The next step is to compare those elements to the elements of the relevant generic offense. In this instance, we don't have a federal statute that specifies the relevant generic offense. The cancellation of removal statute simply refers to "a crime involving moral turpitude." 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2). The Board of Immigration Appeals (BIA) has given substance to that vague phrase by specifying over time which generic offenses involve moral turpitude and which do not. With respect to the closest analogue for our purposes, the BIA has held that a theft offense constitutes a crime involving moral turpitude if the defendant intended to permanently deprive the owner of the property, but not if the defendant intended to effect only a temporary deprivation. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159–60 (9th Cir. 2009).

Comparing the elements of § 10851(a) to the relevant generic offense, it's clear that § 10851(a) is not a categorical match. The statute "criminalizes a broader swath of conduct than the relevant generic offense," *Descamps*, 133 S. Ct. at 2281, by sweeping in car thieves who intended only a temporary deprivation as well as those who intended a permanent deprivation.

That conclusion, however, does end not our inquiry. Whenever a state statute covers a broader range of conduct than the relevant generic offense, we ask whether the statute is divisible—that is, whether the statute "comprises multiple,

alternative versions of the crime." *Id.* at 2284. If it does, and if at least one of those alternatives *would* be a categorical match for the generic offense, we then use the modified categorical approach to figure out which version of the offense the defendant was convicted of. *Id.* at 2285.

So when does a statute comprise "multiple, alternative versions of the crime"? *Descamps* seems to offer a simple answer: whenever the statute itself specifies, in the alternative, multiple ways a particular element can be satisfied. Take the two hypothetical divisible statutes the Court mentioned in *Descamps*: a burglary statute prohibiting unlawful entry into either a building or an automobile; and an assault statute requiring use of a gun, axe, sword, baton, slingshot, knife, machete, or bat. *Id.* at 2281, 2289–90. Those statutes are divisible because they specify the alternative ways one element of the offense can be satisfied. The statutes would therefore allow a prosecutor to narrow the offense by selecting one of the specified alternatives as the basis for the charge. For example, if a prosecutor charged the defendant under the first statute with entering a building, and the jury was accordingly instructed that it had to find that the defendant entered a building in order to convict, we would know the defendant was convicted of the entry-into-a-building version of the offense rather than the entry-into-an-automobile version.

We have real-world examples of divisible statutes, too. In *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), the Court treated as divisible "a Georgia statute that makes it a crime to 'possess, have under [one's] control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.'" *Id.* at 1685 (quoting Ga. Code Ann. § 16-13-30(j)(1)). Each of those disjunctively

listed phrases was deemed to describe an alternative version of the offense, and by consulting the petitioner's plea agreement the Court determined that he had been convicted of the possession-with-intent-to-distribute version. *Id.* The Court then analyzed whether that version of the offense was a categorical match for the relevant generic offense.

Contrast those statutes with the statute *Descamps* held is *not* divisible (at least with respect to the element at issue in that case). California Penal Code § 459 provides that every person who "enters any house, room, apartment, [or any of about two dozen other locations] with intent to commit grand or petit larceny or any felony is guilty of burglary." That statute has several elements, two of which could potentially have been divisible: the location that must be entered (house, room, etc.) and the required *mens rea* (intent to commit grand larceny, petit larceny, or any felony). The Court did not need to explore whether those elements were divisible because the statute's remaining element—the "entry" element—was indivisible and rendered the statute broader than the generic burglary offense. The generic offense requires "breaking and entering or similar conduct," whereas the California statute covers any person who "enters" certain locations, whether the entry is lawful or unlawful. *Descamps*, 133 S. Ct. at 2282. (The Court noted, for example, that the statute covers "a shoplifter who enters a store, like any customer, during normal business hours." *Id.*) The Court held that the "entry" element of § 459 is indivisible because it does not contain alternative statutory phrases, "with one statutory phrase corresponding to the generic crime and another not." *Id.* at 2286. Instead, the statute contains just a single term—"enters"—which is itself overbroad. Thus, a prosecutor could not narrow the offense by selecting from a

list of statutorily specified alternatives describing the different ways the entry element could be satisfied.

What seems to define a divisible statute, then, is the fact that the statute itself specifies alternative ways a particular element can be satisfied. *Id.* at 2285 n.2. That allows the court to determine, at least potentially, "which statutory phrase was the basis for the conviction." *Id.* at 2285. Indivisible statutes, by contrast, lack this defining textual feature. They contain a single statutory phrase that is not broken down into statutorily specified alternatives, each of which would be sufficient to satisfy the element. Under the approach to divisibility that *Descamps* seems to require, we don't need to look beyond the text of the statute to decide whether it's divisible: If the statute is "drafted in the alternative," *id.* at 2285 n.2—meaning it contains alternative statutory phrases describing the different ways a particular element can be met—the statute is divisible with respect to that element. If not, the statute is indivisible.[2]

Assuming I'm right about *Descamps*' approach to divisibility, this is an easy case. Section 10851(a) seems no different from the divisible statutes I mentioned earlier. It defines an element of the offense—the *mens rea* with which the defendant must act—by specifying alternative ways that element can be satisfied: either by intending to permanently deprive the owner of the vehicle, or by intending to temporarily deprive the owner of the vehicle. No less than in the other statutes, the alternative statutory phrases describe

---

[2] Contrary to the majority's suggestion, nothing about this approach to divisibility requires looking at "the facts of each case" to "discover the means of how the person committed the offense." Maj. op. at 18 n.14. It just requires looking at the text of the statute.

alternative versions of the crime, which would allow a prosecutor to narrow the offense by selecting one of the statutorily specified alternatives.

Some judges on our court, including the panel members in *Rendon* and the majority of the en banc panel in this case, have rejected this straightforward approach to divisibility. They have concluded that it is not enough, as *Descamps* seems to hold, that a statute is "drafted in the alternative." They believe we must ask, in addition, whether the statute's disjunctively listed phrases describe alternative "means" or alternative "elements." To answer that question, they say, we must consult state case law and model jury instructions. Doing so will tell us, in a case in which the prosecutor charges multiple alternative statutory phrases, whether the jury must unanimously agree on one of them in order to convict. If jury unanimity is required, the statutory phrases are alternative elements; if jury unanimity is not required, the statutory phrases are alternative means. A statute may be deemed divisible if it contains alternative elements, but not if it contains alternative means. Or so the thinking goes. *See* Maj. op. at 16–25.

This focus on distinguishing between "elements" and "means" seems inconsistent with *Descamps*' approach to divisibility. For one thing, the Court in *Descamps* never suggested that state case law or model jury instructions would need to be consulted in order to determine whether a statute is divisible. As noted above, the Court seemed to hold that the analysis involves a purely textual inquiry. The Court looked to state case law and model jury instructions only when determining what conduct was encompassed by a particular element, a matter that state law unquestionably

controls.  *See Descamps*, 133 S. Ct. at 2282 (citing *People v. Barry*, 29 P. 1026 (Cal. 1892)); *id.* at 2291–92 n.5.

For another thing, in response to the dissent's emphasis on the distinction between elements and means, the Court seemed to indicate that such a distinction is irrelevant, at least for purposes of determining whether a statute is divisible. "Whatever a statute lists (whether elements or means)," the Court wrote, "the documents we approved in *Taylor* and *Shepard*—*i.e.*, indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements.  So a court need not parse state law in the way the dissent suggests:  When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense." *Id.* at 2285 n.2.

Lower courts have offered conflicting readings of this passage.  (See, for example, the cases cited in note 1, *supra*.) What I understand the passage to say is that it doesn't matter whether alternative statutory phrases would be labeled "elements" or "means" under state law.  Whether a statute is divisible under the categorical approach is a question of federal law, and we can assess divisibility based on an examination of the text of the statute alone.  If the statute is drafted in the alternative, it's at least possible that the offense of conviction was narrowed by selecting one of the statutorily specified alternatives.  Examination of the documents approved in *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990)—which I will refer to in short as the *Shepard* documents—will tell us if that is true.

For example, let's assume a statute contains three alternative statutory phrases that would be deemed "means" rather than "elements" under state law, because in a case charging all three the jury would not need to agree unanimously on which one was satisfied. Even in that scenario, the offense of conviction could still be narrowed if, for example, in the specific case at hand the prosecutor actually charged only one of the statutory phrases. Or even if the prosecutor charged all three in the disjunctive, the defendant may have admitted just one of them in his plea agreement and plea colloquy. Or, if the case proceeded to trial, the jury may have been instructed on just one of the statutory phrases, such that the jury had to find that particular phrase satisfied in order to convict. In those cases, too, by examining the *Shepard* documents a court could determine "which statutory phrase was the basis for the conviction." *Descamps*, 133 S. Ct. at 2285. That, it seems to me, is what the Court meant when it said that, regardless of whether alternative statutory phrases are called elements or means as a general matter, the *Shepard* documents will tell us what the elements of the offense of conviction were in the specific case at hand. The approach to divisibility my colleagues have adopted here cannot be squared with this reading of *Descamps*.[3]

---

[3] One aspect of the majority's approach that seems especially at odds with *Descamps* is the majority's reliance on the *Shepard* documents in Almanza-Arenas' own case to "confirm" its view that § 10851(a) is indivisible. Maj. op. at 17. A statute's divisibility isn't determined on a case-by-case basis, so it's hard to see why one would consult the *Shepard* documents in any given case when trying to make that threshold determination. As I understand *Descamps*' instructions, we may look to the *Shepard* documents only after we've first determined that the statute *is* divisible, not when trying to decide whether the statute is divisible or indivisible.

## II

If § 10851(a) is indeed divisible, we can apply the modified categorical approach, which allows us to review the *Shepard* documents to see if Almanza-Arenas was convicted of a narrower version of the offense.  The *Shepard* documents include the indictment or information and, in cases resolved by guilty plea, the plea agreement and plea colloquy. *Descamps*, 133 S. Ct. at 2284.  If Almanza-Arenas was in fact convicted of a narrower version of the offense, we would then compare the elements of that version of the offense to the elements of the generic offense to see if they categorically match, just as we would under the regular, unmodified categorical approach.  *See id.* at 2285.

I concur in the court's judgment because the *Shepard* documents in this case do not establish that Almanza-Arenas was convicted of a narrower version of the § 10851(a) offense.  Count 1 of the complaint charged that, on a specified date, Almanza-Arenas "did unlawfully drive and take a vehicle, the personal property of Guadalupe Jimenez, without the consent of and with intent *either permanently or temporarily* to deprive the owner of title to and possession of said vehicle." (Emphasis added.)  Almanza-Arenas entered a guilty plea to Count 1 under *People v. West*, 477 P.2d 409 (Cal. 1970), which means he entered the plea without admitting a factual basis for it.  Because the complaint charged that Almanza-Arenas acted with the intent to permanently *or* temporarily deprive the owner of the vehicle, the prosecutor did not narrow the offense by selecting one of the alternative statutory phrases.  Nor was the offense narrowed when Almanza-Arenas pleaded guilty.  Neither in his plea agreement nor, we can safely assume, during the plea colloquy did Almanza-Arenas select one of the alternative

statutory phrases and admit to a factual basis satisfying that statutory phrase alone. Almanza-Arenas entered a *West* plea, so he did not admit to a factual basis for anything. He simply pleaded guilty to the offense as described in Count 1.

In this instance, then, use of the modified categorical approach does not show that Almanza-Arenas was convicted of a narrower version of the offense. It establishes only that he was convicted of the broader version, encompassing an intent to permanently or temporarily deprive the owner of the vehicle. When a defendant pleads guilty to an offense encompassing multiple, alternative ways of satisfying a particular element, the conviction is deemed to rest on only the least of the acts criminalized. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015). Thus, under the modified categorical approach, Almanza-Arenas' conviction necessarily establishes only that he took the victim's vehicle with the intent to *temporarily* deprive her of possession. That version of the offense, as noted earlier, is not a categorical match for the generic theft offense that counts as a crime involving moral turpitude.

The government argues that Almanza-Arenas' conviction nonetheless qualifies as a conviction for a crime involving moral turpitude because, under the cancellation of removal statute, he bore the burden of proving eligibility for such relief and one of the requirements for doing so is proving that he has *not* been convicted of a crime involving moral turpitude. When a petitioner seeking cancellation of removal has been convicted under an overbroad statute like § 10851(a), the government contends that the record will always be inconclusive as to which version of the offense he committed: While it's possible the petitioner committed the version of the offense that is not a categorical match, it's also

possible that he committed the version that *is* a categorical match.  Relying on our decision in *Young v. Holder*, 697 F.3d 976, 988–90 (9th Cir. 2012) (en banc), the government argues that because the petitioner in these circumstances can't rule out the possibility that he committed a crime involving moral turpitude, he has not carried his burden of proving eligibility for relief.[4]

Both the government's argument and our decision in *Young* are fundamentally incompatible with the categorical approach, especially after *Descamps* and *Moncrieffe* clarified the elements-focused nature of the inquiry.   Under the categorical approach, a court must determine "what facts are necessarily established by a conviction for the state offense." *Moncrieffe*, 133 S. Ct. at 1693 n.11.  What the defendant actually did to commit the crime is entirely irrelevant. *Descamps*, 133 S. Ct. at 2287–89.

It's true, as the government notes, that uncertainty remains as to what Almanza-Arenas actually *did* to violate § 10851(a).   He may have acted with the intent to permanently deprive the victim of her vehicle, or he may have intended only a temporary deprivation—we don't know. But uncertainty on that score doesn't matter.  What matters here is whether Almanza-Arenas' conviction *necessarily* established that he acted with the intent to permanently deprive the owner of her vehicle, the fact required to render the offense a crime involving moral turpitude.  That is a legal question with a yes or no answer, *see Mellouli*, 135 S. Ct. at

---

[4] Several other circuits have adopted the rule in *Young*.  *See Peralta Sauceda v. Lynch*, 804 F.3d 101, 103 (1st Cir. 2015) (collecting cases). The Second Circuit has rejected the rule.  *Martinez v. Mukasey*, 551 F.3d 113, 121–22 (2d Cir. 2008).

1986–87, and here the answer is no: Almanza-Arenas' conviction *necessarily* established only that he acted with the intent to temporarily deprive the owner of her vehicle. The record is not inconclusive in that regard, and because this issue involves a purely legal determination (rather than a factual determination, as *Young* wrongly held), its resolution is unaffected by which party bears the burden of proof. As a legal matter, Almanza-Arenas' § 10851(a) conviction does not qualify as a conviction for a crime involving moral turpitude.

## III

The BIA relied on an alternative ground for declaring Almanza-Arenas ineligible for cancellation of removal, but that ground is also legally unsound.

During the proceedings before the immigration judge, the government produced some of the *Shepard* documents relating to Almanza-Arenas' § 10851(a) conviction. The government did not, however, produce a transcript of the plea colloquy, no doubt recognizing that it wouldn't reveal any useful information, since Almanza-Arenas entered a *West* plea. Nonetheless, the immigration judge ordered Almanza-Arenas to produce the plea colloquy. When Almanza-Arenas failed to do so, the immigration judge relied on that failure to conclude that he had not carried his burden of proving eligibility for relief. The BIA affirmed the immigration judge's ruling.

The BIA's decision might have been supportable had the immigration judge ordered Almanza-Arenas to produce a *Shepard* document potentially relevant to the analysis required under the modified categorical approach. Congress

has assigned petitioners seeking cancellation of removal the burden of proving eligibility for such relief.   8 U.S.C. § 1229a(c)(4).   It would be an odd regime in which a petitioner could establish eligibility by refusing to produce a document that might show he is statutorily *ineligible*, at least where the immigration judge specifically orders production of such a document and the petitioner is capable of complying with the order.   But that is not the situation here.   Because Almanza-Arenas entered a *West* plea, he made no factual admissions in the course of pleading guilty.   *See People v. Rauen*, 133 Cal. Rptr. 3d 732, 734 (Ct. App. 2011). Production of the plea colloquy would therefore have had no bearing on the analysis required under the modified categorical approach.   The BIA erred by declaring Almanza-Arenas ineligible for cancellation of removal solely because he failed to produce an irrelevant document.